BALL et al. v. RUTLAND R. CO. et al.

(Circuit Court, D. Vermont. March 14, 1899.)

1. JURISDICTION OF FEDERAL COURTS—STOCKHOLDERS' SUITS—JURISDICTIONAL ALLEGATIONS.

   When a suit in equity by stockholders to restrain action by the corporation alleged to be in violation of the rights of complainants arises upon a constitutional provision which gives a court of the United States jurisdiction, the question whether complainants have complied with rule 94 by alleging want of collusion is immaterial.

2. CORPORATIONS—SUITS BY STOCKHOLDERS—SUFFICIENCY OF DEMAND ON CORPORATION.

   An allegation in a bill by stockholders to restrain certain action by the corporation that complainants made a request of the president that such action should not be taken, which the company declined to grant, shows a sufficient demand and refusal to authorize the maintenance of the suit.

3. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACTS—CORPORATE FRANCHISES.

   A provision in the charter of a railroad company giving it the right to fix the rates of fare on its road, within certain limits, constitutes a contract between the state and the corporation; and a corporate franchise, which passes by a sale of the company's property and franchises to a second company, empowered by its charter to make the purchase, under the provision of the federal constitution, is no more subject to impairment by the state after its transfer than before.

4. SAME—DUE PROCESS OF LAW—LEGISLATION AFFECTING EARNINGS OF RAILROAD.

   State legislation reducing the rates of fare on a railroad below what will permit the railroad company to earn a reasonable income on the capital invested is in violation of the fourteenth constitutional amendment, as a taking of property without due process of law.

5. JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE—ENJOINING LAW OFFICERS.

   Where a state statute requiring railroad companies to sell mileage books imposed a fine on any company refusing to obey its provisions, requiring the state's attorney of any county where a violation occurred to prosecute for such fine, a suit by stockholders of a railroad company to enjoin the state's attorneys of the counties through which the road of their corporation passed from proceeding under such statute is, in effect, a suit against the state, the sole purpose of which is to test the validity of the statute, and of which a federal court is without jurisdiction, under the eleventh constitutional amendment, no act of wrong or trespass being charged as having been done or threatened against the complainant's property.

On Motion for Preliminary Injunction.

Frederick H. Button, Michael H. Cardozo, and William W. Stickney, for plaintiffs.

P. M. Meldon, for defendant Rutland R. Co.

David J. Foster, for defendant railroad commissioners.

Frank L. Fish, for defendant state's attorneys.

WHEELER, District Judge. By the charter of the Champlain & Connecticut River Railroad Company, which became the Rutland & Burlington Railroad Company, and afterwards the Rutland Railroad Company, it was granted "the right to receive and collect toll or compensation at such rates as the directors may from time to time prescribe and establish, for the conveyance and transportation

of all passengers and freight over their road, or any part thereof," which the supreme court may alter "for a term not exceeding ten years at any one time, as said court may judge reasonable, and in such manner that the income of said company shall not be reduced below twelve per cent. per annum on the amount of its capital stock, after deducting all expenses." Laws Vt. 1845, p. 75. The road was built, 119 miles long, under this charter, which was perpetual, and not made subject to alteration or repeal, has been twice mortgaged, and has ever since been operated. By section 3898 of Vermont Statutes a person or corporation operating a railroad· was required to keep mileage books of not more than 1,000 miles each for sale at the principal stations, which, by section 3899, were required to be good for all members of a firm or family named, and from the duty of providing which the railroad commissioners might, by section 3900, exempt any railroad. V. S. p. 696. By the Laws of 1898, section 3898 was so amended as to read that the price "shall not exceed two cents per mile for such coupon book"; section 3899: "Coupon books shall be of convenient size, and shall be good in the hands of any person presenting them;" and section 3900: "If a person or corporation owning or operating a railroad neglects or refuses to comply with the two preceding sections, it shall be fined not more than one thousand nor less than five hundred dollars; and it ·shall be the duty of the state's attorney of any county where a violation of said two preceding sections. occurs to prosecute therefor." Laws Vt. 1898, pp. 53, 54. Section 10 of article 1 of the constitution of the United States provides that "no state shall  *  *  *  pass any  *  *  *  law impairing the obligation of contracts"; article 14 of amendments that, "Nor shall any state deprive any person of life, liberty or property without due process of law"; and section 2 of article 6 of the constitution that, "This constitution and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

This bill is brought by the orators as holders, respectively, of large amounts of the preferred stock of the defendant the Rutland Railroad Company, which arose from the first mortgage bonds of the Rutland & Burlington Railroad Company, and is alleged to be now outstanding to the amount of $4,239,100, over common stock to the amount of $2,480,600, to restrain the issue and sale of such mileage books at two cents per mile, good to bearer, involving the exclusion or reduction of profits applicable to dividends upon their stock. The bill further alleges that the ordinary and a just charge for passengers is three cents per mile; that the road is economically managed; that the profits applicable to dividends for the year ending June 30, 1897, amounted to but 1 per cent. on the preferred stock, and for the year ending June 30, 1898, to but 2 per cent. on the preferred stock; "that such mileage books, if issued, will be purchased by different dealers or brokers located at all the differ-

ent stations upon the said road, and by such dealers or brokers resold at a slight profit to nearly all persons wishing to travel upon said road, and thus the defendant the Rutland Railroad Company will be deprived of selling its ordinary local tickets at said rate of three cents per mile, and that nearly all passenger traffic upon said road will be at the rate of two cents per mile, and that said reduction will prevent said railroad from paying said dividend of two per cent., and will reduce the dividend at least one per cent." The state's attorneys of the several counties through which the road runs, and in which it has principal stations, and the railroad commissioners, are made parties; and a motion for a preliminary injunction has now been heard upon the bill and the answer of the Rutland Railroad Company, which admits the allegations of the bill, before referred to, to be true.

Question is made whether the bill sufficiently sets forth either the efforts of the plaintiffs to procure refusal to issue and sell the mileage books, or that the suit is not a collusive one to give this court jurisdiction, according to Hawes v. Oakland, 104 U. S. 450, and equity rule 94. That a stockholder has a remedy in equity against directors to prevent violations of charter rights or breaches of trust to the reduction of profits, and that it may be sought in the courts of the United States in cases of proper citizenship or foundation, appears to have been settled in Dodge v. Woolsey, 18 How. 331. Hawes v. Oakland pointed out what would be necessary for maintaining such a bill, and rule 94 followed it to prevent collusive suits by nonresident stockholders in federal courts. Although the orators are nonresidents, this suit arises upon the constitution of the United States, and this court has jurisdiction of it without reference to citizenship, and allegations of want of collusion in procuring suit to be brought on adverse citizenship would be immaterial. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418. The bill shows that the plaintiffs, as stockholders, directed a communication to the president, calling attention to the provision of the original charter relating to fares, and requesting the directors to decline to give effect to the acts mentioned, and to resist their enforcement in all lawful ways, and that "the Rutland Railroad Company declined to comply with the request." This appears to be a sufficient compliance with the rule, which, in this respect, merely requires the plaintiffs to set forth with particularity their efforts to secure such action as they desired; and the allegations show a refusal that stands in the way of relief by action of the directors or of the company. The answer admits these allegations to be true, and alleges that the reason of the refusal was the fear of a harassing number of suits and expensive litigation. These allegations, which are to be taken as true, show that the plaintiffs could not obtain relief from the loss which the sale of the mileage books would involve but by suit in their own behalf.

That a grant of special privileges in a charter is a contract between the sovereignty and the corporation, within the meaning of the constitution of the United States, appears to have been well settled ever since Trustees v. Woodward, 4 Wheat. 518. In Bridge Co. v. Dix, 6

How. 507, the legislature of Vermont had incorporated the plaintiff there, with the exclusive privilege of erecting a bridge over West river within four miles of its mouth, and the right of taking tolls for passing over the bridge, which the corporation had enjoyed until the bridge was taken by the right of eminent domain, under the laws of the state, on compensation. In delivering the opinion of the court, Mr. Justice Daniel said:

"In considering the question propounded in these causes, there can be no doubt, nor has it been doubted in argument on either side of this controversy, that the charter of incorporation granted to the plaintiffs in 1793, with the rights and privileges it declared or implied, formed a contract between the plaintiffs and the state of Vermont, which the latter, under the inhibition in the tenth section of the first article of the constitution, could have no power to impair."

The contract between the state and the predecessor of the defendant railroad company here for the building and operating this road was that the corporation should always have the right to demand and receive such fares as the directors might fix, which could be reduced by the supreme court of the state only, and not below 12 per cent. on the capital stock. This rate is large, but the risk was great; and the limit was fixed, in view of the whole, by the legislative discretion. Question is also made whether this franchise for taking tolls and fares has passed to the Rutland Railroad Company, and is so held now as not to be subject to legislation. It was the most important corporate right from the beginning; was covered by the mortgages, the first of which went into preferred stock, such as is held by the orators; and was a part of what the act of incorporation of the Rutland Railroad Company (section 7) authorized it to obtain, and of which it, pursuant thereto, took conveyance. That act was, by section 12, made subject to the action of any future legislature to amend, alter, or repeal, as the public good might require; and this provision is much relied upon as authorizing this legislation. But this franchise existed before that act, and, if that whole act should be repealed, the franchise would remain, as the road itself would, and belong to the orators and others, where the repeal of the act would leave it; and it would be as much outside of impairment by the legislature as before. If this were not so, the Rutland Railroad Company would still have the right to operate its road, and to take reasonable fares and tolls for profit; and while the legislature has the right to regulate, and within proper bounds to limit, them, it does not appear to have the right thereby to destroy or take away such reasonable profits as may be earned by the corporation for the benefit of its stockholders. Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418. The 2 per cent. dividends on the preferred stock, without any dividend reaching to the common stock, would seem to be far within a reasonable return upon the investment of the stockholders, and far below what the legislature could regulate away. This meager profit would be the property of the orators, of which the legislature could

not deprive them by giving it, or one-half of it, to such part of the public as would use the road. Due process of law is a regular course of judicial proceedings, of which parties to be affected are entitled to notice, and in which they may be heard. An act of the legislature is not such due process, and in the taking of property by such an act the state would be depriving the person entitled to the property of the property, contrary to the fourteenth amendment. That persons, whom legislation contrary to these provisions of the federal constitution attempts to affect, have a right to relief in the federal courts, is not now, and could not well be, questioned. In this case the mileage books, if issued and sold, would go beyond reach, and adequate relief against consequent loss can only be had by injunction, in equity, as is sought here.

The railroad commissioners of the state and the state's attorneys of the several counties where there are principal stations on the road being made parties, an injunction to restrain them from instituting proceedings to enforce the act is sought, and a multiplicity of proceedings is alluded to in the answer of the railroad company as feared. The penal amendment constituting the new section 3900, V. S., did not take effect till February 1, 1899, and before then a restraining order in this cause, pending this motion, which has continued ever since, had prevented the issue and sale of these mileage books on this road. So there has been this restraint, but no neglect or refusal otherwise, by this railroad company; and there can be none that would be unlawful while that order, or an injunction following it, is in force and controls. The neglect or refusal would not be the act of the party, but obedience to the order or injunction; and it is not to be expected or supposed that any officers of the state would attempt to prevent or interfere in any way with such obedience. The railroad commissioners proceed by recommendations with which the supreme court only has power to compel compliance, "if, upon hearing and legal proofs it judges that such recommendations are just and reasonable." V. S. §§ 3989, 3990. And the state's attorneys must, of course, proceed by indictment or information against the corporation for the fine, which the statute attempts to impose upon the corporation only, and but once. It does not provide for a fine for neglect or refusal at each principal station, or at the stations of each county, nor in any way cumulate the penalty; and, if the fine could be sued for, there would be no danger of a multiplicity of actions. The requirement of prosecution by the state's attorney of any county where there should be a violation would seem to be a provision for venue, and not for the creation of penalties, or of addition to their duties otherwise imposed. Nothing can be done, if attempted, but by judicial proceedings; and the judges of the state courts are expressly as much bound by these constitutional provisions as any judges, and would, of course, as scrupulously regard them. Article 11 of amendments to the constitution of the United States prohibits suits against states by individuals. The subject of injunctions of federal courts against state officers acting for their states under statutes contrary to the constitution of the United States has lately been under con-

sideration by the supreme court of the United States in Fitts v McGhee (decided Jan. 3, 1899) 19 Sup. Ct. 269. In the opinion of the court Mr. Justice Harlan said:

"In support of the contention that the present suit is not one against the state, reference was made by counsel to several cases, among which were Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962; Allen v. Railroad Co.. 114 U. S. 311, 5 Sup. Ct. 925–962; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699; In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785; Reagan v. Trust Co., 154 U. S. 362, 388, 14 Sup. Ct. 1047; Scott v. Donald, 165 U. S. 58, 17 Sup. Ct. 265; and Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418. Upon examination it will be found that the defendants in each of those cases were officers of the state, specially charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which, it was averred, they were committing, or were about to commit, some specific wrong or trespass, to the injury of the plaintiff's rights. There is a wide difference between a suit against individuals holding official positions under a state, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the state. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons. If their officers commit acts of trespass or wrong to the citizen, they may be individually proceeded against for such trespass or wrong. Under the view we take of the question, the citizen is not without effective remedy, when proceeded against under a legislative enactment void for repugnancy to the supreme law of the land; for, whatever the form of proceeding against him, he can make his defense upon the ground that the statute is unconstitutional and void. And that question can be ultimately brought to this court for final determination."

None of the state officers here are alleged to be about or to threaten to interfere in any way with the property or operations of this railroad company but through and at the end of legal proceedings in behalf of the state as mentioned, and none could apparently be had unless some attachment or levy, on mesne or other process, should be attempted. No reason for any injunction against these officers now appears. The denial of the motion as to them may, however, be without prejudice. Motion as to railroad company granted, and as to railroad commissioners and state's attorneys denied, without prejudice.