LINDSLEY v. NATURAL CARBONIC GAS CO. et al.

(Circuit Court, S. D. New York. June 12, 1908. On Motion for Preliminary Injunction July 1, 1908.)

1. COURTS—JURISDICTION OF FEDERAL COURT—STOCKHOLDERS' SUIT.

A stockholders' suit in a federal court is not subject to the requirements of equity rule 94, where it involves a constitutional question which gives the court jurisdiction, regardless of the citizenship of the parties, and complainant and the corporation and its directors are evidently united in interest.

2. SAME—STAYING SUIT IN STATE COURT—SUIT AGAINST STATE.

A suit in a federal court against an Attorney General of a state to enjoin the enforcement of an unconstitutional state statute by the institution of criminal proceedings for its violation is not within the prohibition of Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), as one to stay proceedings in a state court, nor of the eleventh constitutional amendment as a suit against the state.

[Ed. Note.—Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

3. INJUNCTION—SUBJECTS—CRIMINAL PROSECUTIONS.

The jurisdiction of a federal court of equity to enjoin the enforcement of an unconstitutional state statute to protect the property rights of complainant from irreparable injury is not defeated by the fact that the means of enforcement provided by the act are by criminal prosecutions for its violation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 179.]

4. CONSTITUTIONAL LAW—VALIDITY OF STATUTES—CONSTRUCTION IN FAVOR OF CONSTITUTIONALITY.

Act N. Y. May 20, 1908, "for the protection of the natural mineral springs of the state and to prevent waste and impairment of its natural mineral waters," which prohibits the pumping of mineral waters or carbonic acid gas from wells drilled into the rock, or the doing of any act or thing whatsoever whereby the natural flow from any mineral spring is impeded, etc.. is not so clearly unconstitutional or beyond the police powers of the state as to justify a federal court in granting a preliminary injunction to restrain its enforcement at suit of a landowner engaged in pumping gas for sale from wells drilled into the rock on its lands.

5. SAME—DETERMINATION OF VALIDITY OF STATUTES—JUDICIAL AUTHORITY AND DUTY.

A federal court of first instance, acting upon affidavits, which pronounces a state statute unconstitutional, assumes a grave responsibility justified only by most exceptional circumstances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 43–46.]

In Equity. On motion to set aside temporary restraining order.

Morris & Plante (Alton B. Parker, of counsel), for complainant.

Rockwood, Scott & McKelvey, Charles C. Lester, Thomas & Oppenheimer, and William S. Jackson, for defendants.

WARD, Circuit Judge. The plaintiff, a citizen of New Jersey and a stockholder and bondholder of the defendant the Natural Carbonic Gas Company, brings this bill, on his own behalf and on behalf of all other stockholders and bondholders of the said company, against the Natural Carbonic Gas Company, a corporation of the state of New York, the Attorney General of the state of New York, certain citizens of the state of New York, who compose the "Citizens' committee in charge of the movement to restore the Saratoga mineral waters and the prestige of the Saratoga Springs as a national health resort," and the defendant Frank H. Hathorn, who is co-operating with them, asking that the defendant the Natural Carbonic Gas Company be enjoined from complying with, and the other defendants enjoined from enforcing, as they threaten to do, the act of May 20, 1908, entitled "An act for the protection of the natural mineral springs of the state and to prevent waste and impairment of its natural mineral waters," on the ground that the same is unconstitutional, violating especially the fourteenth amendment to the Constitution, because it deprives the defendant the Natural Carbonic Gas Company and the complainant of its and his property without due process of law and takes its and his property for public and private purposes, or both, without compensation, and deprives it and him of the equal protection of the laws.

The act is as follows:

An act for the protection of the natural mineral springs of the state and to prevent waste and impairment of its natural mineral waters.

The people of the state of New York, represented in Senate and Assembly, do enact as follows:

Section 1. Pumping, or by any artificial contrivance whatsoever in any manner accelerating the natural flow or producing an unnatural flow of that class of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas from any well made by boring or drilling into the rock, or pumping, or by any artificial contrivance whatsoever in any manner accelerating the natural flow or producing an unnatural flow, of natural carbonic acid gas issuing from or contained in any well made by boring or drilling into the rock, is hereby declared to be unlawful. Pumping, or by any artificial contrivance whatsoever in any manner accelerating the natural flow, or producing an unnatural flow, of that class of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas from any well made by boring or drilling into the rock, or pumping, or by any artificial contrivance whatsoever in any manner accelerating the natural flow, or producing an unnatural flow of, natural carbonic acid gas issuing from or contained in any well made by boring or drilling into the rock, by reason whereof the natural flow from any mineral spring or any mineral well belonging to any other person or corporation, is impeded, retarded, diminished, diverted or

endangered, or the quality of its waters is impaired, or the quantity of its carbonic acid gas or mineral ingredients diminished, is hereby declared to be unlawful. Pumping, or otherwise drawing by artificial appliance from any well made by boring or drilling into the rock, that class of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas, or pumping, or by any artificial contrivance whatsoever in any manner producing an unnatural flow of, carbonic acid gas issuing from or contained in any well made by boring or drilling into the rock, for the purpose of extracting, collecting, compressing, liquefying or vending such gas as a commodity otherwise than in connection with the mineral water and the other mineral ingredients with which it was associated, is hereby declared to be unlawful. The doing of any act or thing whatsoever whereby the natural flow from any spring or well of that class of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas, is impeded, retarded, diminished, diverted or endangered, or the quality of its water is impaired, or the quantity of its carbonic acid gas or mineral ingredients diminished, is hereby declared to be unlawful.

Sec. 2. Any citizen of the state may maintain an action to restrain any person or corporation from committing any of the unlawful acts specified in section one of this act, in any city or town in which said citizen is assessed for and is liable to pay, or within one year before the commencement of the action has paid, a tax.

Sec. 3. The Attorney General may at any time, in the exercise of his discretion, bring and maintain an action in the name of the people of the state of New York, to restrain any person or corporation from any of the unlawful acts specified in section one of this act. It shall be the duty of the Attorney General to institute and prosecute such an action, upon the written request of ten citizens of this state who are assessed for taxes therein and whose aggregate assessments amount to not less than $10,000, and who shall state, in writing, facts and circumstances showing any such unlawful act or acts and give an undertaking with sureties to be approved by a Justice of the Supreme Court to indemnify the people against the costs of such action.

Sec. 4. The provisions of section 870 of the Code of Civil Procedure shall apply to any action brought under this act and no person shall be excused from answering on the ground that his examination would tend to convict him of crime, but such answers shall not be used against him in any criminal prosecution for violating the provisions of this act.

Sec. 5. Nothing in this act contained shall be construed to affect the Onondaga salt springs reservation, located in Onondaga county, or the springs of any county adjacent thereto.

Sec. 6. This act shall take effect immediately.

The bill alleges that the complainant is a citizen and resident of the state of New Jersey and the owner and holder of 5 first-mortgage gold coupon bonds of the value of $500 each of the Natural Carbonic Gas Company, and of 19 10-year 6 per cent. debenture bonds of the value of $7,500, and of 35 shares of preferred capital stock, and of 27 shares of the common capital stock of the said company of the value of $100 each; said first-mortgage bonds being secured by a mortgage upon the premises of the said company consisting of 21 acres of land in the village of Saratoga Springs upon which it has erected valuable buildings containing costly machinery and in which it is doing a business of the value of more than $50,000 a year. The bill admits that the defendant gas company pumps through wells made by boring or drilling into the rock on its lands mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas, and that, when the said mineral water is raised to the surface, it extracts the gas which it compresses and sells throughout the United States. It is also alleged that the enforcement of the statute will ut-

terly destroy the value of the gas company's property and of the com-plainant's interest therein.

The act, read in connection with the business of the gas company, provides that:

First. Pumping mineral waters or gas from any such well is unlawful. Second. Pumping mineral water or gas from any such well by means whereof the natural flow from any mineral spring or any mineral well belonging to any other person or corporation is impeded, retarded, diminished, diverted or endangered or the quality of its waters is impaired or the quantity of its carbonic acid gas or mineral ingredients is diminished is unlawful. Third. Pumping from any such well mineral waters for the purpose of extracting, collecting, compressing, liquefying or vending such gas as a commodity other-wise than in connection with the mineral water or other mineral ingredient with which it is associated is unlawful. Fourth. Doing any act or thing whereby the natural flow from any such well is impeded, retarded, diminished, diverted or endangered or the quality of its waters is impaired or the quantity of its carbonic acid gas or mineral ingredients is diminished is unlawful.

An order to show cause why a preliminary injunction as prayed for should not issue with a restraining order in the meantime was grant-ed, returnable June 19th, and the defendants now move to vacate the restraining order.

It is objected, in the first place, that the complainant cannot assert his rights as a stockholder because of his failure to comply with the ninety-fourth rule in equity. Inasmuch as the jurisdiction of the court depends not only upon diversity of citizenship, but upon constitutional grounds, the rule is not applicable. It was enacted to prevent collusive actions in the federal courts by nonresident stockholders on the ground of diversity of citizenship, and also to prevent stockholders from as-serting rights of a corporation which should be asserted by its direct-ors. In this case the court has jurisdiction because of the constitu-tional questions raised, and it is quite evident that the gas company and its directors must be in entire sympathy with the bill. Kimball v. City of Cedar Rapids (C. C.) 99 Fed. 130. Individual stockholders proceeded in the cases of Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, and Ball v. Rutland Railroad Company (C. C.) 93 Fed. 513. Besides, the complainant, in his character as creditor of the gas company and holder of bonds secured by mortgage on its premises, is entitled to assert his rights on behalf of himself and of all other bondholders. This was done by the trustee of the bond-holders in the case of Reagan v. Farmers' Loan & Trust Company, 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014.

It is next objected that this court cannot issue an injunction to stay proceedings in the state court (section 720, Rev. St. U. S. [U. S. Comp. St. 1901, p. 581]), nor enjoin the state (eleventh amendment to the Constitution), nor as a court of equity enjoin criminal prosecu-tions. The acts declared by the statute to be unlawful became mis-demeanors under section 155 of the Penal Code of New York, and punishable under section 15 by imprisonment in the penitentiary or in the county jail for not more than one year, or by a fine of not more than $500, or both. So far as section 720 is concerned, it does not apply, because no proceedings, civil or criminal, have been begun in the state court. Fisk v. Union Pacific Railroad Co., 10 Blatchf. 518,

Fed. Cas. No. 4,830. In respect to the eleventh amendment, this is not a suit against the state. Smyth v. Ames, supra. Finally, although it is the general principle that courts of equity cannot enjoin criminal proceedings, still there are exceptions to the rule. Prout v. Starr, 188 U. S. 537, 23 Sup. Ct. 398, 47 L. Ed. 584, Mr. Justice Brown, speaking of that case in Davis v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778, said:

"Plaintiff seeks to maintain its bill under the exception above noted, wherein, in a few cases, an injunction has been allowed to issue to restrain an invasion of rights of property by the enforcement of an unconstitutional law, where such enforcement would result in irreparable damages to the plaintiff. It cites in that regard the case of Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, in which, under a law of Texas giving express authority to a railroad company or other party in interest to bring suit against the railroad commissioners of that state, a bill was sustained against such commission to restrain the enforcement of unreasonable and unjust rates, and in the opinion a few instances were cited where bills were sustained against officers of the state, who, under color of an unconstitutional statute, were committing acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the state. It would seem that, if there were jurisdiction in a court of equity to enjoin the invasion of property rights through the instrumentality of an unconstitutional law, that jurisdiction would not be ousted by the fact that the state had chosen to assert its power to enforce such law by indictment or other criminal proceeding. Springhead Spinning Co. v. Riley, L. R. 6 Eq. 551, 558."

See, also, Camden Co. v. City of Catlettsburg (C. C.) 129 Fed. 421. It is worth observing that no such objection was made or considered in Smyth v. Ames, supra.

Coming now to the question of the constitutionality of the statute, I am referred to only three cases similar to the one under consideration, viz.: Townsend v. State, 147 Ind. 624, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. Rep. 477; Given v. State, 160 Ind. 552, 66 N. E. 750; Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. Ct. 756, 44 L. Ed. 729. In the first case, a law forbidding the burning of oil in flambeau lights, which was obviously intended to prevent waste, was held to be constitutional. In the second case, a law making it a penal offense to let gas or oil escape for more than two days after it was struck was held constitutional. Each of these laws was regarded as an exercise of the police power of the state. In Ohio v. Indiana, the title of the statute referred to considerations of safety, but it was treated by the Supreme Court as aimed solely against waste. Oil and gas being minerals and to be regarded as real estate, the Supreme Court considered with care the decisions of the highest courts of Indiana to determine the rule of property of that state in such subterranean supplies, and concluded that by the law of Indiana the surface owner had a right to take and reduce to his possession as much oil and gas as he wanted, but that he must do so with reference to the rights of all others interested in the same source of supply, and therefore must do so without unnecessary wastefulness. The statute was, accordingly, held constitutional. Justice McKenna, speaking of this decision in the subsequent case of Bacon v. Walker, 204 U. S. 311, 316, 27 Sup. Ct. 289, 290, 51 L. Ed. 499, said:

"Of pertinent significance is the case of Ohio Oil Company v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576. 44 L. Ed. 729. There a statute of the state of Indiana was attacked, which regulated the sinking, maintenance, use, and operation of natural gas and oil wells. The object of the statute was to prevent the waste of gas. The defendants in the action asserted against the statute the ownership of the soil, and the familiar principle that such ownership carried with it the right to the minerals beneath, and the consequent privilege of mining to extract them. The principle was conceded, but it was declared inapplicable, as ignoring the peculiar character of the substances, oil and gas, with which the statute was concerned. It was pointed out that those substances, though situated beneath the surface, had no fixed situs, but had the power of self-transmission. No one owner, it was therefore said, could exercise his right to extract from the common reservoir in which the supply was held without, to an extent, diminishing the source of supply to which all the other owners of the surface had to exercise their rights. The waste of one owner, it was further said, caused by a reckless enjoyment of his right, operated upon the other surface owners. The statute was sustained as a constitutional exercise of the power of the state, on account of the peculiar nature of the right and the objects upon which it was exerted, for the purpose of protecting all of the collective owners."

Subterranean waters are like the deposits of oil and gas in Indiana in having no certain course and in being formless and self-transmitting. The law of the state of New York as to the rule of property in subterranean percolating waters seems more restricted than the law of Indiana in respect to oil and gas. Forbell v. City of New York, 164 N. Y. 522, 58 N. E. 644, 51 L. R. A. 695, 79 Am. St. Rep. 666. In this case the right of the surface owner was limited to taking only so much of the subterranean supply as was necessary to the fullest enjoyment and usefulness of his land as land, without the right by pumping to appropriate the waters as a commodity to be supplied to others. Upon this reasoning in the Forbell Case the city of Brooklyn was enjoined from operating its great and costly pumping plant for supplying water to the public, at the suit of a farmer whose land it had made unfit for the cultivation of celery and water cresses.

It is to be noted that oil and gas are of no value to the land as land, and have no value for any purpose when united. One surface owner may want oil, and another gas, or, if one wants both, he must use them separately. The statute of Indiana protected owners who wanted gas from the unnecessary waste of it by owners who wanted oil; but gaseous spring water, though of no value to the land as land, has a value in itself, and the interests of the surface owners are either in the naturally charged water or in the gas alone. The statute of New York protects the surface owner who wishes the charged water against the owner who wishes only the gas. The Forbell Case seems to treat the use of percolating water as an adjunct of the land as the primary use to be preferred to and protected against the secondary use as a commodity apart from the land. Here, again, the gaseous water differs from ordinary water, in that its value lies, not in its use for the land as land, but in its use as a health-giving beverage when drunk on the land or bottled and sold as a commodity for use elsewhere.

In accordance with the authorities cited, it may be that the state of New York, though not the owner of the springs, and though not legislating for the safety, health, or morals of the community, may, in

the exercise of its police power, regulate the subterranean mineral waters within its domain for the common benefit of persons interested in them, and that it may lin.it the use of them to the natural flow and declare pumping unlawful—certainly such pumping as endangers the rights of other persons interested in the same source of supply—and, further, that it may declare unlawful as a secondary use the pumping of such waters by the surface owner for the purpose of vending the gas to be extracted from them. The presumption is that the statute is constitutional. To justify the restraining order the unconstitutionality should be clear. As it is not, I feel compelled to vacate the restraining order.

## On Motion for Preliminary Injunction.

At the argument on the motion for preliminary injunction, an objection to the statute of New York on the ground of unconstitutionality was pressed which had not been considered on the motion to vacate the restraining order. It was that the defendant the Natural Carbonic Gas Company was denied the equal protection of the laws, in violation of the fourteenth amendment of the federal Constitution, in that the statute forbids pumping only in the case of wells that go into the rock. The last lines of the first section of the statute apply to acts generally, whereas all the rest of the section applies solely to acts connected with wells bored into the rock. These lines are as follows:

"The doing of any act or thing whatsoever whereby the natural flow from any spring or well of that class of mineral waters holding in solution natural salts or an excess of carbonic acid gas is impeded, retarded, diminished, diverted or endangered, or the quality of its water is impaired or the quantity of its carbonic acid gas or mineral ingredients diminished is hereby declared to be unlawful."

The owner of wells in fissures or that merely reach the rock may, subject to this restriction, increase the natural flow of the water or of the gas and impound the gas to be sold as a commodity.

Assuming that the complainant, in his character as bondholder of the defendant the Natural Carbonic Gas Company, has the right to urge it, this objection causes much doubt, because there does seem to be a discrimination between persons carrying on the same business. The seat of the gas is in the rock. If the mineral waters and the gas come from a common source of supply, it would seem to follow that the pumping of any well, whether bored into the rock or merely reaching the rock, would diminish the supply of each; but, if so, the pumping of wells not bored into the rock which injures other wells is made by the statute unlawful, and there is no practical discrimination.

A federal court of first instance, acting upon affidavits, which pronounces a state statute unconstitutional, assumes a grave responsibility justified only by most exceptional circumstances. The Legislature must be presumed to have acted with full information on the subject regulated and with an honest purpose. Although I do not discover it in the papers submitted, there may be a reasonable basis for the discrimination between wells that go into the rock and wells that do not. At all events, pumping of wells that do not go into the rock, which re-

sults in injury to any other well, is unlawful and may be enjoined just as the pumping of wells that go into the rock may be enjoined. It is to be presumed that the courts of the state of New York, if asked to enforce this law, will refuse a preliminary injunction, if it be made clear that the law does unreasonably discriminate between persons carrying on the same business.

The motion for preliminary injunction is denied.