### WADLEY v. BLOUNT et al.

(Circuit Court, W. D. Virginia. January 31, 1895.)

1. EQUITY—POWER TO RESTRAIN CRIMINAL PROCEEDINGS AT LAW.

The jurisdiction of a court of equity to restrain proceedings at law extends to criminal as well as civil proceedings, where such criminal proceedings are instituted by plaintiffs who have previously sought the aid of the court of equity to maintain their rights as against the parties against whom the criminal proceedings are instituted, the subject-matter of both proceedings being the same.

**2. SAME.**

H. brought a suit in equity, in a federal court, against the W. Co., alleging its insolvency, and seeking ascertainment of its liabilities, and the appointment of a receiver. B. and others, creditors of the W. Co., afterwards filed their petitions, asking to be made parties complainant, and charging mismanagement of the affairs of the corporation, and were accordingly let in as parties. A master was appointed to investigate the conduct of the affairs of the company, who examined witnesses, including one W., the president of the company, and made a report, finding said W. indebted to the company in a large sum. Subsequently the creditors filed an amended and supplemental bill against the company, W., and others, seeking a personal decree against W. for such indebtedness. While the cause was in this position, the creditors held a meeting, agreed to submit to W. a proposition to settle the claims against him for 50 cents on the dollar, and, in case he should not accept, to proceed criminally against him. Their proposition being declined, they caused an indictment for embezzlement to be found against W. in a state court, using for that purpose, before the grand jury, the depositions taken in the federal court, and causing their counsel to be summoned as witnesses before the grand jury. W. then filed his bill against the creditors who had instituted such criminal proceedings and the prosecuting officer of the state to enjoin the further prosecution of the indictment. *Held*, that all the defendants should be enjoined until the final determination of the first suit, and until the further order of the court, from prosecuting such indictment.

**3. COMITY—BETWEEN COURTS—LIMITS.**

Judicial comity does not require a court, which has complete jurisdiction over a cause pending and undetermined before it, to allow the use by another court of the pleadings and depositions filed in such cause, before they have been considered for the purpose for which they were intended, and in a cause involving the same subject-matter and parties, over which the court desiring to use them has assumed jurisdiction after the making and filing of such papers.

**4. CRIMINAL LAW — USE OF DEPOSITION TAKEN IN A FEDERAL COURT BEFORE A STATE GRAND JURY.**

It seems that a deposition and master's report, taken and filed in an equity cause in a federal court, cannot, in any proper way, be used before a grand jury in a state court to secure the indictment of the person giving such deposition.

This was a suit by H. G. Wadley against Blount & Boynton, Paul Hutchinson, as administrator of Charles Hutchinson, deceased, J. L. Gleaves, prosecuting attorney for Wythe county, Va., and others, to restrain the prosecution of an indictment in the county court of Wythe county, Va.

D. F. Bailey, Joseph C. Wysor, and Blair & Blair, for plaintiff.

J. A. Walker, M. M. Caldwell, and J. L. Gleaves, for defendants.

GOFF, Circuit Judge. This case is before me on motion of defendants to dissolve the injunction granted on the 8th day of June, 1894, as prayed for in plaintiff's bill. In order to fairly understand the questions involved in this controversy, and to appreciate those now disposed of, it is necessary that the main points raised in the case of Paul Hutchinson, administrator of Charles Hutchinson, deceased, et al., against the Wytheville Insurance & Banking Company, and in the petition filed therein in the name of Blount & Boynton and others against said defendant and others, as also in the amended and supplemental bill, in the nature of a cross bill, filed in said cause by Blount & Boynton et al. against H. G. Wadley and others, to all of

which reference is made in the pleadings and exhibits of this case,—it being in fact a proceeding filed in and made part of said original cause, —should be referred to and briefly set forth. The first-mentioned bill was filed on the 5th day of October, 1893, by Paul Hutchinson, a citizen of the state of Iowa, against the Wytheville Insurance & Banking Company, a corporation organized under the laws of the state of Virginia, and doing business at Wytheville, in the western district of Virginia. The object of the suit was to ascertain the liabilities of said company, which was alleged to be insolvent, to secure the appointment of a receiver, and for such action as is usual in what is known as a "Creditors' suit." On the 6th day of October, 1893, this court appointed H. J. Heuser receiver of the assets of such company, directing him to take charge of its property, and see to the management of its business; and he duly qualified as such, proceeding with the discharge of the duties assigned him. On the 18th and 19th days of the same month, Blount & Boynton and other creditors of said Wytheville Insurance & Banking Company filed their petitions in said cause, and, at their request, were made parties complainants therein; they claiming that they had valid claims against said company, which were set forth, amounting to many thousands of dollars in the aggregate. They charged mismanagement of the business affairs of the company, asking for the appointment of a master commissioner, the removal of the receiver, and for other action and relief, not required to be fully alluded to here. The court refused to remove the receiver, but appointed Preston L. Gray, as master, with instructions to investigate the conduct of the affairs of said company, in what way it had been managed, and of what its assets consisted; also, that he ascertain in what manner the funds of the company had been invested, and how the same had been disposed of; that he report the liabilities of the company, showing the sums due its policy holders and other creditors, the amounts theretofore paid its officers as salaries, in whose name the funds of the company have been kept, and such other matters relating to the business of said company as any party to the suit might request. The said master, after due notice to the parties, proceeded to execute the orders of the court, for that purpose taking charge of the books, papers, correspondence, and records of the company, and calling and examining as a witness the plaintiff, H. G. Wadley, relative to his management of the business affairs of such company, of which he had been president. The said Wadley was so examined on the 8th day of February, 1894, being fully questioned, by the master, by counsel for said company, and also by his own counsel, as well as those who represented the creditors; the same being in the form of a deposition taken before said master. The object of this examination was to fix an individual liability on said Wadley, by showing the unlawful diversion by him of the assets of the said Wytheville Insurance & Banking Company. The master filed his report on the 27th day of April, 1894, in which it is set forth that Wadley is indebted to the company in the sum of $196,342.24. On the 25th day of May, 1894, the said creditors filed an amended and supplemental bill against such company, Wadley, and others, rendered

necessary or advisable, it was supposed, because of the developments brought out by the examination before, and the report made by, the master; the intention being to secure a personal decree against said Wadley for the sum so shown by the master of his indebtedness to the company. On the 29th of May, 1894, on the motion of such creditors, the court removed Heuser, as receiver, and appointed, to succeed him, H. B. Maupin, and also recommitted the report to the master, in order that additional proof relative to certain claims against the company might be taken. Numerous exceptions have been noted to the master's report, all of which are as yet undisposed of. The suit is still pending, and the questions raised by the pleadings and proofs are unadjudicated.

On the 16th day of May, 1894, in the county court of Wythe county, Va., an indictment against said H. G. Wadley was returned by the grand jury then attending that court, in which he was charged with the embezzlement and misappropriation of the funds of the Wytheville Insurance & Banking Company, in the particular instances and amounts as reported by the said master in his report so filed in this court. The bill I now consider was presented on the 8th day of June, 1894, in which, after reciting much of the history of the litigation to which I have made reference, it is charged that the same creditors who so submitted themselves to the jurisdiction of this court, and who so petitioned this court to consider and adjudicate the matters referred to in said suits, are the identical parties who, acting by counsel employed by them for that purpose,—the same counsel who so represented and now represent such creditors in this court,—caused said indictment to be instituted, and are now conducting the criminal prosecution founded thereon; and, also, it is charged therein that the same matters, rights, and issues are involved in said criminal procedure, as are set forth in the civil pleadings so theretofore submitted by such creditors to the determination of this court; that Wadley is the same person pursued by them in their proceedings in the civil suits in this court and in the criminal procedure in the county court of Wythe county, Va. It is also alleged that Wadley has been taken into custody by the said county court, and is now held under a bail bond to appear and answer said indictment. And it is further charged that after said master had made up his report, and when the nature of the same and the contents thereof had been communicated to said creditors, they and their counsel, after consultation together, decided to and did offer a proposition for the settlement of the debts mentioned in the report to the said Wadley, they agreeing to accept fifty cents on the dollar in full satisfaction of their said claims, the said offer being communicated to Wadley by a committee of the creditors appointed for that purpose at the consultation alluded to, and being by him promptly rejected; it being set forth in the same, which was reduced to writing, that it was only to remain in force for the period of 10 days. The plaintiff now charges that said offer was intended as a threat, the object being to intimidate him, and force him to pay the debts of said company. The said proposition, showing the terms thereof, the names of the creditors who participated in it, and the

counsel who represented them, is filed as an exhibit with the bill, in which it is also charged that after the plaintiff's deposition was taken by the said master, and before the said meeting of creditors was held, and their offer of adjustment made to him, he was threatened by them with a criminal prosecution if he did not settle with them the debts they claimed to be due and payable to them by said company. It is also alleged in the bill that such creditors procured a copy of the report as made by Master Commissioner Gray (the same not having as yet been submitted for the action of this court), and used it as evidence before said grand jury, portions of it having been read for that purpose to such jury by counsel for said creditors, who had caused themselves to be summoned as witnesses, in order to thereby obtain the finding of the indictment against Wadley. It is also charged that they also so used a copy of the deposition of the plaintiff so taken by the master, and now filed in said cause.

The plaintiff insists that his rights as a citizen of the United States were thus violated, as it is provided in the fifth amendment of the constitution that no person shall be compelled in any criminal case to be a witness against himself; and that, in pursuance of this provision, congress has enacted section 860 of the Revised Statutes, prohibiting the use of pleadings and evidence taken in judicial proceedings as testimony in criminal prosecutions. As I dispose of this case on other grounds, I will not discuss the questions relating to the use of copies of the master's report and plaintiff's deposition in the criminal procedure in Wythe county court, in the state of Virginia, but, in passing them by, will remark that I cannot conceive of any proper way by which such papers could have been used as evidence before the grand jury of that county, under the circumstances as set forth in the bill and proceedings of this cause; and, but for the uncontradicted testimony of a number of witnesses, I would not think it possible that such action could be had before any grand jury duly impaneled by any court in this country. Nor will I intimate by any ruling on the matter at this time that any court of the state of Virginia will during the trial of a criminal cause permit such copies or evidence of that character to be offered for the consideration of the jury. Should I be mistaken in this, the remedy would, I think, be plain, and the relief without doubt.

There are other allegations in the bill, relative to the action of said creditors and the rights of the plaintiff, but I do not find it necessary to allude to them now. On consideration of the bill, the exhibits, and the proceedings had in the original cause, I directed an order in substance restraining the further prosecution of said indictment until the matters referred to by plaintiff could be heard and determined by this court. The creditors have filed their joint answer, in which they admit the allegations of the bill, relative to the proceedings in this court, in the suit of Paul Hutchinson, administrator, etc., against the Wytheville Insurance & Banking Company, and their connection with the same. They admit that this court, to the fullest extent, obtained complete jurisdiction over the subject-matter of and the parties to said suit; but they insist that Wadley himself was not a party thereto. They admit the examination of

Wadley before the commissioner, and his cross-examination by their counsel, and claim that he was not called by them, but that he voluntarily submitted himself for such examination. A considerable portion of their answer is devoted to a statement, from the standpoint of said creditors, of the manner that Wadley managed the business affairs of the companies with which he was officially connected, especially the Wytheville Insurance & Banking Company; and they set forth how it was that he despoiled it and them of their assets. They admit the offer of compromise, and deny making threats of criminal prosecution, or that their counsel procured themselves to be summoned as witnesses before the grand jury, or that they read a copy of said deposition before it. They also admit that they employed counsel to assist the attorney for the state in the prosecution of the indictment returned against Wadley in the county court of Wythe county, insisting that it was entirely proper for them to do so. Other statements in the answer I do not deem it necessary to call attention to now.

The defendant J. L. Gleaves files his separate answer, in which he claims that he is the attorney for the commonwealth for Wythe county, Va., and that it is his duty to prosecute said Wadley on the indictment so found, and that this court has no right, authority, or jurisdiction to enjoin and prohibit him from so doing. He claims that he was not a party to the litigation pending in this court, and not familiar with the proceedings had therein, and he admits that this court obtained in proper and lawful manner complete jurisdiction over all the parties and the issues involved in the suit of Hutchinson, administrator, etc., against the Wytheville Insurance & Banking Company. He denies that the creditors who submitted themselves to the jurisdiction of this court are the parties who are conducting the criminal proceedings against Wadley, and insists that the state of Virginia, acting through her grand jury, instituted the same, and that he in his official capacity has charge of it. He also denies that "any federal record" was unlawfully used, in procuring said indictment, but that it was returned on the evidence of witnesses regularly summoned by him for that purpose. The other matters set out in the answer of defendant Gleaves, as to what transpired in the county court of Wythe county subsequent to the finding of the indictment against Wadley, or as to what can be made to appear from the books, records, and papers of the Wytheville Insurance & Banking Company relative to his misappropriation of the funds of that institution, are not material to the points on which I think this case must be decided.

After examining the entire record of all the mass of litigation drawn into this controversy, I find that, so far as the questions now presented are concerned, the greater part thereof can be eliminated as not germane, and that the real issue is a simple one, elementary in character,—not "startling and unusual," as counsel have claimed,—the decision of which follows as matter of course when we apply the facts, as found and admitted, to the law, about which there is no controversy. That this court, by proceedings instituted in October, 1893, obtained jurisdiction over the property of the

Wytheville Insurance & Banking Company, and over the parties to said suits, including those who came in by petition as well as those who appeared before the master, is, I think, beyond controversy. The court took the assets of said company into its custody, and placed them in the possession of its receiver, and it directed its master to make and state an account, showing what application had been made of the funds of the company, where the same were, who the creditors are, and the sums due them. In executing this order of the court, the master had all the creditors of the company before him, as well as the company itself, and Wadley, the president thereof, as to whom the said creditors were particularly endeavoring to make such a case as would establish his individual responsibility for their claims. That the order of this court justified such proceedings before the master, the creditors, their counsel, and the master evidently believed, and the court is not now disposed to differ with them. That Wadley himself was, after the filing of the petitions by Blount & Boynton and others, in October, 1893 (in which he was charged with misappropriation of the funds of said company, and required to answer the special interrogatories therein propounded, and defend himself before the master), in effect a defendant to said suit, is well established by the authorities. Buerk v. Imhaeuser, 8 Fed. 457; Carter v. City of New Orleans, 19 Fed. 659; Seegee v. Thomas, 3 Blatchf. 11, Fed. Cas. No. 12,633; Anderson v. Watt, 138 U. S. 694, 11 Sup. Ct. 449. Under all the circumstances of this case, it would be inequitable to permit the creditors who filed their petition against Wadley, and who insisted before the master that he was individually responsible and liable to them for their debts against said company, to now contend that the one who has been so proceeded and reported against is not and has not been a party to the suit. They are estopped in a court of conscience from making such a claim, by their words and acts, and by the record they have made in this case. Independent of this, the cross bill makes Wadley a formal party to the litigation, subjecting him beyond all question to the jurisdiction and decree of the court, and entitling him to its protection relative to all matters affecting the questions fairly involved in the pleas yet to be determined by it.

The question, then, is, shall a court which has first acquired jurisdiction of the parties to, and the subject-matter of, a controversy, retain the exclusive control of the same until it has fully disposed of the questions raised by the pleadings before it? The authorities answer this question in the affirmative; the decisions are all one way; and the rule is the same in both civil and criminal cases. The only matter to be determined is as to the court first securing jurisdiction. If that be a court of the state, then the courts of the United States must not and will not interfere. The state courts should observe the same rule, and they generally do. This court will not permit its process to be used, either civil or criminal, by parties engaged in litigation in the courts of the state of Virginia, relative to the subject-matter of such litigation, thereby impeding the administration of justice by rendering it impossible for those materially interested

therein to properly prepare and submit their case for the decision of that court the jurisdiction of which was first prayed for and granted; nor will it, I deem it proper to add, tolerate any such interference by the courts of that state with judicial proceedings regularly before it and exclusively within its jurisdiction.

The suggestion made in the answer of the attorney for the commonwealth that judicial comity requires that one court shall grant to another the use of its records and copies of the papers in its custody, and that it will also direct its officers to obey a subpoena duces tecum relative thereto, when satisfied that the same are material as evidence in a case pending in the court issuing such summons, is, as a general proposition, true; but it would be extending the matter of courtesy beyond reasonable limits for that court which has complete jurisdiction over a cause pending before and undetermined by it to authorize or consent to the use by another court of the pleadings, commissioners' reports, and depositions filed in said cause, before they have been considered for the purposes for which they were intended, it appearing, also, that the court so desiring them designs to use them in a case over which it had assumed jurisdiction even after the making and filing of the particular papers asked for, and which involved the same parties and the identical subject-matter as does the case so before it. No precedent can be found for such a request, and I indulge the hope that no court will ever so rule as to furnish an authority that would justify such a proceeding.

It appears that the county court of Wythe county was fully advised of the pendency in this court of the litigation referred to; that it expressed a desire to prevent the improper use of copies of certain parts thereof before its grand jury; and that counsel called its attention to the fact that the matters set out in the indictment were the same as those involved in said suit, insisting at the same time that said indictment had been procured by the unlawful use of said copies, and also suggesting that the prosecution of the same, under the circumstances, would be discourteous to this court. I trust I may be permitted to say that it would have been well had that court then recalled and exercised the judicial comity to which its able and energetic prosecutor now so eloquently alludes.

On the question of jurisdiction, and the right of the court first acquiring it to retain exclusive control of the subject-matter and the parties until it has fully disposed of the questions submitted to it, if authority is desired, it can be found in the following cases: Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, Fed. Cas. No. 14,401; Sedgwick v. Menck, 6 Blatchf. 156, Fed. Cas. No. 12,616; Judd v. Telegraph Co., 31 Fed. 182; Schuehle v. Reiman, 86 N. Y. 270; Hagan v. Lucas, 10 Pet. 400; Williams v. Benedict, 8 How. 111; Taylor v. Carryl, 20 How. 583; Freeman v. Howe, 24 How. 450; Buck v. Colbath, 3 Wall. 334; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355; Heidritter v. Oil-Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135; Railroad Co. v. Gomila, 132 U. S. 478, 10 Sup. Ct. 155.

I find from the testimony in this case that after the creditors of the Wytheville Insurance & Banking Company had intervened and been

made parties complainants in the said suit of Paul Hutchinson, administrator, etc., against that company and others, and after they had proven their claims before the master, and he had formulated his report, they, in a meeting called and held for the purpose of determining the proper course for them to pursue, in the light of the case as shown by said report and Wadley's deposition, concluded to submit to him (the said Wadley) an offer to adjust the debts reported by said master (as to which it was claimed he was individually liable) at the rate of fifty cents on the dollar; at the same time having an understanding among themselves that, if he declined such proposition, they would procure his indictment in the county court of Wythe county, and prosecute him for the misappropriation of the funds of said company, the money required to carry on such criminal procedure being arranged for at the same meeting that the offer of compromise was agreed to. And also do I find that, when such offer was declined by Wadley, they proceeded to procure his indictment, using for that purpose a copy of his deposition so given before the master of this court, and evidently procuring the summoning of their counsel as witnesses before the grand jury (some of whom declined to go before that body unless they were first duly subpoenaed so to do), and having them assist in the preparation of the bill of indictment and in the prosecution of Wadley under it. That the criminal procedure, when first suggested, was intended to aid the creditors in adjusting their debts with Wadley is, I think, without doubt; and the fact that the effort failed is, so far as the matter now before me is concerned, immaterial. The circumstances were, it must be conceded, unusually anomalous, such as to naturally cause excitement and indignation; yet, nevertheless, the evidence discloses conduct that cannot be justified, and is far from being conducive to the fair administration of justice; that is, in fact, most reprehensible, dangerously near the borderland that divides impropriety from criminality, and I truly hope that never again in this jurisdiction will an effort be made to duplicate it.

We now have nothing to do with the questions which involve the guilt or innocence of Wadley, on the charges set forth in the indictment, or his liability because of mismanagement by him of the affairs of said Wytheville Insurance & Banking Company, as alleged in the proceedings before referred to. Those matters, in the regular discharge of judicial procedure, in due time and place will be considered and disposed of. We are now concerned in seeing that all the parties to this litigation, plaintiffs and defendants, creditors and debtors, accusers and accused, shall each and all have every proper opportunity to fairly present their respective claims, and also that the court is neither delayed nor hampered in reaching a just conclusion.

If circumstances can exist under which it is proper for a court of the United States to restrain parties from prosecuting a cause in a state court, they certainly are now before us, and that there are cases where it is entirely proper so to do has been declared by courts worthy of our confidence and commanding our respect. It is claimed that section 720 of the Revised Statutes of the United States pro-

hibits the granting of an injunction in cases like the one I now consider, but such insistence is without merit. That section is to be construed in connection with section 716, which gives to the courts of the United States the power to issue all writs necessary to the exercise of their respective jurisdictions, and agreeable to the usages and principles of law. If a United States court has first obtained jurisdiction of a case, it can then always take such action as may be required to maintain its authority and enforce its decree; and, under such circumstances, section 720 of the Revised Statutes is not applicable. Fisk v. Railroad Co., 10 Blatchf. 518, Fed. Cas. No. 4,830; French v. Hay, 22 Wall. 250; Dietzsch v. Huidekoper, 103 U. S. 494; Sharon v. Terry, 36 Fed. 365; President, etc., v. Merritt, 59 Fed. 6. That an injunction may be issued under such circumstances is now well established by the decisions, and that it may apply to a criminal as well as a civil suit is not without precedent. A careful examination of the authorities leads me to the conclusion that in cases where a criminal prosecution has been instituted while a civil suit was pending involving the same subject-matter, and the parties procuring the indictment are the same as those who instituted the civil suit, the court whose jurisdiction was first sought, and before which said civil proceeding is so pending and undetermined, will restrain the parties from prosecuting the indictment until it can hear and dispose of said suit.

In Story's Equity Jurisprudence (volume 2, § 893) it is said:

"There are, however, cases in which courts of equity will not exercise any jurisdiction by way of injunction to stay proceedings at law. In the first place, they will not interfere to stay proceedings in any criminal matters, or in any cases not strictly of a civil nature; as, for instance, they will not grant an injunction to stay proceedings on a mandamus or an indictment or an information or a writ of prohibition. But this restriction applies only to cases where the parties seeking redress by such proceedings are not the plaintiffs in equity; for, if they are, the court possesses power to restrain them personally from proceeding at the same time, upon the same matter of right, for redress in the form of a civil suit and of a criminal prosecution. In such cases the injunction is merely incidental to the ordinary power of the court to impose terms upon parties who seek its aid in furtherance of their rights."

In Beach's Modern Equity Practice (volume 2, § 761) we find the following:

"It is a rule of almost universal application both in England and in this country that a court of equity has no jurisdiction by injunction to restrain a criminal proceeding, whether it be by indictment or summary process, unless the criminal proceeding be brought by a party to a suit already pending in the equity court, and to try the same right that is in issue there."

On this subject, see the following authorities: Turner v. Turner, 15 Jur. 218; Mayor of York v. Pilkington, 2 Atk. 302; Lord Montague v. Dudman, 2 Ves. Sr. 396; Attorney General v. Cleaver, 18 Ves. 220; Kerr v. Preston, 6 Ch. Div. 463; Spink v. Francis, 19 Fed. 670, 20 Fed. 567; Eden, Inj. p. 42, c. 2; Jeremy, Eq. Jur. bk. 3, p. 308, c. 2; 3 Wood. Lect. 56; 3 Daniell, Ch. Prac. p. 1721; In re Sawyer, 124 U. S. 200, 211, 8 Sup. Ct. 482, in which Mr. Justice Gray, in delivering the opinion of the court, said:

"The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there."

For the reasons mentioned, I shall sustain the plaintiff's bill, and continue in force the restraining order heretofore granted. Other questions, interesting in character, and of great general importance, are raised by the plaintiff, and were discussed by counsel; but I do not find that their consideration is essential to the disposition of this case, and therefore I shall not now allude to them. I will pass a decree declaring that, as the equity jurisdiction of this court first attached to both the parties and the subject-matter involved in this litigation, it will be improper to use the pleadings, proofs, and papers filed herein, or any of them, or copies thereof, in any proceeding, civil or criminal, in any other court, against any party to this suit, while it is pending in and is unadjudicated by this court; and an injunction may issue restraining such use, and enjoining all of the parties hereto, including their attorneys, clerks, and agents, either directly or indirectly, and the attorney for the state for Wythe county, Va., from all further prosecution of the indictment now pending in the county court of said county, in the name of the commonwealth of Virginia against H. G. Wadley, in which he is charged with the embezzlement of the funds of the Wytheville Insurance & Banking Company, until the final hearing shall have been had and disposition made of the said cause of Paul Hutchinson, administrator, etc., against the Wytheville Insurance & Banking Company and others, and the petitions and supplemental, amended, and cross bill filed therein, and until the further order of this court.