## BURKE CONST. CO. v. KLINE et al.*

(Circuit Court of Appeals, Eighth Circuit. March 18, 1921.)

No. 5706.

1. **Courts ⬌493(2)—Final adjudication, in federal suit based on diversity of citizenship, would be futile, if defendants could avoid it by subsequent suit and first adjudication in state court.**

    If defendants in a suit in a federal court, of which that court first acquired jurisdiction on the ground of diversity of citizenship, by subsequently bringing a suit in a state court against the plaintiff to obtain an adjudication of the same controversies between these citizens of different states, could thus lawfully confer jurisdiction thereof on the state court, first to finally adjudge the issues through a race of diligence before the plaintiff would be able to obtain an adjudication thereof in the federal court, the federal court's jurisdiction and adjudication would thereby be rendered futile, because the matters would have become res judicata before the federal court could decide them.

2. **Courts ⬌493(2)—Constitutional right to adjudication in federal court cannot be defeated by subsequent suit in state court by federal defendant.**

    The right of a citizen under Const., art. 3, § 2, to have determined by a federal court a controversy between himself and a citizen of another state, cannot be defeated by the institution by defendant, after suit was begun in the federal court, of an action in a state court to determine the same controversy.

3. **Courts ⬌508(2)—Federal court may enjoin prosecution of subsequently instituted suit in state court on same question.**

    Where the defendant, in a suit in a federal court whose jurisdiction was based on the diversity of citizenship, thereafter brought an action in the state court on the same controversy, the federal court can protect its jurisdiction and plaintiff's constitutional right to have the cause determined in the federal court, by enjoining the proceedings in the state court pending the determination in the federal court.

4. **Courts ⬌508(2)—Federal court can restrain suit in state court against federal plaintiff's sureties, which might determine liability.**

    Where a paving contractor had instituted a suit in the federal court against an improvement district to determine controversies arising out of the contract, and the district thereafter brought an action against the contractor and his sureties in the state court, the federal court can enjoin the prosecution of the action in the state court against the sureties, as well as against the contractor, since the determination of the liability of the sureties in the state action could fix the contractor's liability to them and thereby deprive him of his right to have that controversy determined by the federal court.

    Lewis, District Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by the Burke Construction Company against John P. Kline and others, as the Board of Improvement of Paving Improvement District No. 20 of the City of Texarkana, Ark. From an order denying plaintiff's application for an injunction, plaintiff appeals. Order reversed, and cause remanded, with instructions.

James B. McDonough, of Ft. Smith, Ark., James D. Head, of Texarkana, Ark., and Vincent M. Miles, of Ft. Smith, Ark., for appellant.

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari granted 254 U. S. —, 41 Sup. Ct. 624, 65 L. Ed. —.

Frank S. Quinn and W. H. Arnold, both of Texarkana, Ark., for appellees.

Before SANBORN, Circuit Judge, and LEWIS and COTTERAL, District Judges.

SANBORN, Circuit Judge. This is an appeal of the Burke Construction Company, a corporation, a citizen and resident of the state of Missouri, from an order denying its application for an injunction restraining the board of improvement of paving improvement district No. 20 of the city of Texarkana, a corporation and citizen of the state of Arkansas, the members of the board, its attorney, agents, and representatives, from prosecuting a suit in equity it brought against the Burke Construction Company and others on March 19, 1920, to obtain a trial and adjudication of the same controversy between these two citizens, to obtain a trial and adjudication of which the Burke Company had brought an action at law against the board and its members in the United States District Court of the Western District of Arkansas to recover $85,250.84 on February 16, 1920. The controversy between the two corporations involved their respective liabilities, each to the other, under a contract between them, made on November 29, 1916, whereby the Burke Company agreed to pave certain streets in the town of Texarkana, under which contract it had partially paved those streets. The Burke Company alleged in its complaint for the $85,250.84 that in all things it had complied with and was ready and willing to fulfill the terms of the contract between them, but that the board failed to pay it, according to the terms thereof, moneys which it had earned, wrongfully and arbitrarily changed the requirements of the agreement after it was made, unnecessarily delayed the Burke Company in its work thereunder, unlawfully seized and appropriated to its own use the tools, machinery, and equipment of the Burke Company, which it had furnished to perform the contract, notified and compelled it to cease performance before the contract was completed, and committed other breaches of the agreement, to the damage of the Burke Company in the amount stated.

In the subsequent suit, which the board brought in the state chancery court of Arkansas in March, 1920, against the Burke Company, it counted on the same contract, joined with the Burke Company as defendants M. C. Burke, J. A. Burke, and the United States Fidelity & Guaranty Company, signers of the Burke Company's bond as sureties for its faithful performance of the contract, and alleged, among other things, that the board had complied with its obligations thereunder, but that the Burke Company had failed to complete its performance thereof, though notified to do so; that the board held in its hands $13,752.45, retained percentages of the compensation that had been earned by the Burke Company on the work it had completed previous to November, 1919, $60,000 balance of $150,000 the board had received for bonds of the district it had sold to pay for the paving under the contract, and the compensation earned by the Burke Company in November, 1919, amounting in all to approximately $77,000; that it had taken the tools, machinery, and equipment which the Burke Company

had provided for itself to perform the contract; that it will cost $80,000 to complete its performance; and that there is "a conflict between plaintiff and defendants upon many subjects arising under said contract"; and the board prayed that (1) an accounting be had with reference to the work that had been done by the Burke Construction Company under the agreement, and (2) that the board have judgment against the Burke Construction Company and the sureties on its bond for $80,000, the amount required to complete performance of the contract, and have judgment for other damages; that it retain and use the Burke Company's tools, machinery and equipment and the $77,-000 in money.

On July 2, 1920, the board filed its answer to the complaint of the Burke Company in the action in the federal court, in which it denied many of the averments of the Burke Company in its complaint, repeated the allegations of the board in its complaint in the state chancery suit, set up a counterclaim, and prayed for a judgment against the Burke Company for $99,498.63, the amount then alleged to be required to complete performance of the contract, for a lien on the $77,-000 in its hands, and for other relief. In July, 1920, the action in the federal court below was tried to a jury, which disagreed. Counsel for the board then gave notice that they would proceed with the prosecution of its suit against the Burke Company and its sureties in the state chancery court.

In this state of facts the Burke Company brought this suit in equity in the federal court below against the board and its members, setting forth in its complaint the facts which have been recited, and prayed for an injunction against the board, its members, its attorneys, representatives, and servants, from proceeding with the taking of testimony or the further prosecution of its suit in the state chancery court until after the trial and adjudication of the controversy between these citizens of different states in the action first brought in the federal court below, and the enforcement of its judgment or decree by that court.

[1] The controversy which was the subject thereof was between citizens of different states. Of that controversy between these citizens of different states and of the parties to that suit the court below acquired full jurisdiction by the filing of the complaint and the commencement of that suit by the Burke Company on March 19, 1920. By the Constitution of the United States (article 3, § 2) and the acts of Congress (U. S. Comp. Stat. § 991), the constitutional right was granted to the Burke Company to ask and to have a trial and adjudication of that controversy and the enforcement of that adjudication by the federal court. If the board, which subsequently, on March, 1920, brought its suit against the Burke Company and the sureties on its bond to secure an adjudication by that court of the same controversy between the same citizens, by a race of diligence lawfully may secure such an adjudication in the suit in the state court before in the orderly and proper course of proceeding in the suit in the federal court, the Burke Company is able to obtain such an adjudication and the enforcement thereof in the federal court, then the federal court's adjudication will be made futile, because before it has rendered it the

controversy will have become res adjudicata by the adjudication of the state court (Boatmen's Bank v. Fritzlen [8 C. C. A.] 135 Fed. 650, 667, 68 C. C. A. 288; Insurance Co. v. Harris, 97 U. S. 331, 336, 24 L. Ed. 959; Barber Asphalt Paving Co. v. Morris [8 C. C. A.] 132 Fed. 945, 951, 66 C. C. A. 55, 67 L. R. A. 761), and the Burke Company will have been deprived of the right granted to it by the Constitution of the United States to the determination of its controversy with the board by the trial and adjudication thereof by the federal court, which first acquired jurisdiction of it and of the parties thereto.

[2] A citizen who would exercise this constitutional right usually is compelled to bring his suit in the federal court in the state of the residence of the defendant in order to get service of process upon and jurisdiction of him. The reason for the grant to him by the Constitution, and in this case to the Burke Company, of this right to have the decision of its controversy with the citizen of another state by the federal court, was thereby to avoid the local attachments and prejudices in favor of the defendant that those who made the Constitution feared might injuriously affect the administration of justice in the state courts against the claims of citizens of other states, and the question which this case presents is:

When a citizen of one state, in the exercise of his constitutional right to an adjudication of a controversy he has with a citizen of another state, brings a personal action against the latter in the proper federal court in the state of the defendant's residence and citizenship, invokes and persistently demands an adjudication of that controversy and the enforcement of that adjudication by that federal court, and that court first acquires full jurisdiction of the controversy and the parties to it, may the defendant, by subsequently commencing a suit in one of the courts of his state against the plaintiff in the first suit and others to secure an adjudication of the same controversy, and by pressing it to a judgment or decree before an adjudication can be obtained in the federal court, deprive the plaintiff of his constitutional right to an adjudication of the controversy and enforcement thereof by the federal court, oust that court of the jurisdiction first acquired by it and render the action in it futile, or may the federal court, which first acquires jurisdiction of the controversy and of the parties, lawfully protect and preserve its jurisdiction, its adjudication of the controversy, and the enforcement thereof by the use of its injunction against the defendants, who seek to deprive it of jurisdiction, their attorneys, representatives, and agents?

The first impression which the presentation of the question presents to the mind is that it should be so answered as to preserve and enforce the right of the citizen to the trial and decision of his controversy by the federal court which the Constitution and the acts of Congress granted to him. Counsel for the board, however, while they concede that, where courts have concurrent jurisdiction of the same parties and controversies, the court which first acquires jurisdiction of the res in a controversy holds it against courts in which subsequent suits are brought concerning that thing, contend that this case falls under the rule that actions in personam between the same parties con-

cerning the same controversies may proceed at the same time in courts of concurrent jurisdiction, and the adjudication first obtained renders the controversy decided res adjudicata as against a subsequent adjudication in the other court, and renders the suit therein futile.

But the answer to this contention is that, in the case at bar, after the Burke Company had invoked the jurisdiction of the federal court and had thereby exercised its constitutional right to an adjudication of its controversy by that court, that federal court had exclusive jurisdiction to hear and decide the controversy, and the state court in which the subsequent action was brought had no concurrent jurisdiction thereof as long as the Burke Company insisted upon and demanded its constitutional right. In the investigation, study, and decision of this question the fact must be borne in mind that general statements, in text-books and in opinions in cases in which the right of neither of the parties to the exclusive determination of the controversy involved by the federal court by virtue of article 3, § 2, of the Constitution was not claimed, demanded, thoughtfully considered, or adjudged, that actions in personam involving the same issues between the same parties may proceed at the same time in courts of concurrent jurisdiction, are neither authoritative nor persuasive on the question in this case, because in such cases it is probable that the claim of this constitutional right never came to the mind of or was determined by the writer. Bearing this rule of law and of reason in mind let us consider the authorities cited by counsel for the board.

Stanton v. Embry, 93 U. S. 548, 554, 23 L. Ed. 983, is the leading case for the general rule that actions in personam involving the same controversy between the same parties may proceed at the same time in courts of concurrent jurisdiction, and the adjudication first obtained prevails. But in Stanton v. Embry the plaintiff first brought an action for $10,000 and interest against the defendants for services in one of the courts of the state of Connecticut. The same plaintiffs subsequently brought an action for the same cause against the same defendants in one of the courts in the District of Columbia. The defendants pleaded the first suit in abatement of the second suit, and the Supreme Court held that the pendency of the prior suit in the state court was not a bar to the subsequent suit between the same parties for the same cause of action in the court of the District of Columbia. No question of the constitutional right of a plaintiff in a first suit in a federal court to the determination of his controversy by that court either existed, was presented, considered, or decided.

In Woren v. Witherbee, Sherman & Co. and in Kuzman v. Same (D. C.) 240 Fed. 1013, the same state of facts, so far as they relate to the question under discussion here, existed as in Stanton v. Embry.

In W. E. Stewart Land Co. v. Arthur, 267 Fed. 184 (8 C. C. A.), the land company first sued Arthur, the defendant, upon two checks and a promissory note in the federal court in the state of Iowa. Subsequently the land company, the same plaintiff, sued Arthur, the same defendant, in one of the courts in Oklahoma on the same instruments and attached property in that state. Arthur, the defendant, who had not invoked or claimed any constitutional right to a trial of the con-

271 F.—39

troversy in the federal court, sought to have that court enjoin the land company from proceeding to take testimony in the Oklahoma case, and this court held that he was not entitled to such an injunction. But here no question of the constitutional right of the land company, which alone invoked the jurisdiction of the federal court to an adjudication of its controversy, was presented or decided, for by itself bringing its second action in the state court it waived and renounced its constitutional right to the decision of the controversy by the federal court and submitted itself to 'the jurisdiction of the state court. And Arthur never invoked or claimed any such constitutional right. If, after the land company had brought its action in the federal court in Iowa, the defendant Arthur had brought a suit in Oklahoma against the Land Company for an adjudication of the controversy between these par-·ties, and the land company had insisted upon its constitutional right to an adjudication.by the federal court and sought an injunction to· prevent Arthur from depriving it of that right by an early decision of the question in the Oklahoma court, a different question would have been presented and a different answer returned.

In Merritt v. American Steel Barge Co. (8 C. C. A.) 79 Fed. 228, 229, 230, 231, 24 C. C. A. 530, the Merritts, citizens of Minnesota, brought an action in one of the courts in the state of Minnesota against the Barge Company, a citizen of New York, for damages for its alleged conversion of certain corporate stock and personal property. The Barge Company removed the action to the federal court in Minnesota. After that removal the Barge Company itself, which, against the protests of the Merritts, had invoked the jurisdiction of the federal court by removing the case to that court, sued the Merritts in a state court of New York to determine the rights of the respective parties to the stock and personal property involved in the controversy in the Minnesota case, and obtained a decree in the New York court to the effect that all this property belonged to the Barge Company, and that decree was held to render the matters there adjudged res adjudicata at the subsequent trial of the action in the federal court in Minnesota. But no question of the constitutional right of the Barge Company or of the Merritts to the adjudication of its controversy by the federal court was presented or adjudged, for the Barge Company, which had invoked its jurisdiction of the controversy, had renounced its right to such an adjudication by invoking and securing the adjudication of its controversy by the New York state court, and the Merritts never claimed any such right under the Constitution.

The cases upon which counsel for the board seem to rely with the most confidence have now been reviewed. Others that have been cited by them, and read and considered by the court, are Ogden City v. Weaver (8 C. C. A.) 108 Fed. 564, 47 C. C. A. 485; Barber Asphalt Paving Co. v. Morris (8 C. C. A.) 132 Fed. 945, 66 C. C. A. 55, 67 L. R. A. 761; Gates v. Bucki (8 C. C. A.) 53 Fed. 961, 4 C. C. A. 116; Buck v. Colbath, 70 U. S. (3 Wall.) 334, 18 L. Ed. 257; Standley v. Roberts (8 C. C. A.) 59 Fed. 336, 8 C. C. A. 305; Insurance Co. v. Harris, 97 U. S. 331, 24 L. Ed. 959; In re Lasserot, 240 Fed. 325, 153 C. C. A. 251; Zimmerman v. So Relle (8 C. C. A.) 80 Fed. 417,

25 C. C. A. 518; McClellan v. Carland, 217 U. S. 268, 30 Sup. Ct. 501, 54 L. Ed. 762; Defiance Water Co. v. City of Defiance (C. C.) 100 Fed. 178; Bellamy v. St. Louis, Iron Mtn. & S. S. Ry. Co. (8 C. C. A.) 220 Fed. 876, 136 C. C. A. 442; St. Louis & I. M. Ry. Co. v. McKnight, 244 U. S. 368, 37 Sup. Ct. 611, 61 L. Ed. 1200; Baltimore & O. R. Co. v. Wabash R. Co., 119 Fed. 678, 682, 57 C. C. A. 322. But no opinion or decision, in any case where the question was presented, argued, or seriously considered by the court, has been found to the effect that a citizen of one state, who had the constitutional right to the adjudication of a controversy between himself and a citizen of another state, who first brought a suit in personam or in rem to obtain such an adjudication in a federal court that first obtained jurisdiction of the controversy and of the parties, and who persistently claimed his constitutional right, could be deprived of it by a subsequent suit in a state court brought by the defendant in the federal court against the plaintiff therein, or against him and others, to obtain a determination of the same controversy by the state court or by any other action which the defendant in the federal court might take.

On the other hand, the plain terms of the grant of this right in the Constitution and in the acts of Congress, the reason for and the purpose of it, the supremacy of the Constitution and of the rights granted under it to the citizens of the United States and of the authority and jurisdiction vested by it in the federal courts, the more persuasive reasons and the authorities converge with compelling force to establish these conclusions:

When a citizen of one state, in the exercise of the right granted to him by the Constitution and the acts of Congress to an adjudication of a controversy judicable in a federal court between him and a citizen of another state, brings a suit in personam or in rem against the latter in the proper federal court to obtain the adjudication of that controversy by that court, and that court first acquires jurisdiction of that controversy and of the parties thereto, and the plaintiff therein persistently demands the adjudication of the controversy by the federal court, the defendant in that suit may not deprive the plaintiff of his constitutional right to such an adjudication by the federal court, or of the enforcement thereof by that court, by bringing a subsequent suit in a state court against the plaintiff in the federal court or against him and others to obtain an adjudication by the latter court of the same controversy or of that controversy and of other controversies, or by any other action or proceedings such a defendant may take. Sharon v. Terry (C. C.) 36 Fed. 337, 354, 1 L. R. A. 572; Brown v. Fletcher, 231 Fed. 92, 94, 145 C. C. A. 280; Wadley v. Blount (C. C.) 65 Fed. 667, 670, 672, 673, 674, 675, 676; Taylor v. Taintor, 83 U. S. (16 Wall.) 366, 370, 21 L. Ed. 287; Ex parte Young, 209 U. S. 123, 162, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Prout v. Starr, 188 U. S. 537, 544, 23 Sup. Ct. 398, 47 L. Ed. 584; Gamble v. City of San Diego (C. C.) 79 Fed. 487, 500.

"The courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction

extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." Chicot County v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 697, 698, 37 L. Ed. 546.

Nor may they unduly or unnecessarily postpone the hearings or delay the proceedings in their courts to the disadvantage of suitors vested with the right to a determination of their controversies by such courts by the Constitution and the acts of Congress. McClellan v. Carland, 217 U. S. 268, 30 Sup. Ct. 501, 54 L. Ed. 762; McClellan v. Carland (8 C. C. A.) 187 Fed. 915, 919, 110 C. C. A. 49. The power is conferred and the duty is imposed on a federal court, which, at the suit of a citizen of one state against a citizen of another state, to secure from it an adjudication of a controversy between them judicable in the federal court and which first acquires jurisdiction of the controversy and the parties, to protect its jurisdiction of and its power to adjudicate the controversy and to enforce its adjudication by its injunction against any subsequent proceedings in a state court or elsewhere by the defendant, his attorneys, agents or representatives which would or might have the effect to defeat or impair its jurisdiction, its adjudication, its orders, judgments, or decrees or its enforcement thereof. Looney v. Eastern Texas Ry. Co., 247 U. S. 214, 221, 38 Sup. Ct. 460, 62 L. Ed. 1084; Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 Sup. Ct. 96, 65 L. Ed. ——; Wallace v. McConnell, 13 Pet. 143, 10 L. Ed. 95; French v. Hay, 22 Wall. 250, 22 L. Ed. 857; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; St. Louis-San Francisco Ry. Co. v. McElvain (D. C.) 253 Fed. 123, 131; Sharon v. Terry (C. C.) 36 Fed. 337, 364, 365, 366, 1 L. R. A. 572; Julian v. Central Trust Co., 193 U. S. 93, 113, 24 Sup. Ct. 399, 48 L. Ed. 629; Swift v. Black Panther Oil & Gas Co., 244 Fed. 20, 22, 156 C. C. A. 448; Wadley v. Blount (C. C.) 65 Fed. 667, 669, 670, 671, 673, 674, 675; Starr v. Chicago, R. I. & P. Ry. Co. (C. C.) 110 Fed. 3, 6, 7; Prout v. Starr, 188 U. S. 537, 544, 23 Sup. Ct. 398, 47 L. Ed. 584; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.

In Sharon v. Terry (C. C.) 36 Fed. 337, 1 L. R. A. 572, the controversy was between citizens of different states concerning the effect and breach of a marriage contract as the controversy here is concerning the effect and breach of a paving contract. The plaintiff in the federal court first brought suit against the defendant, and the defendant subsequently brought a suit against the plaintiff in a state court to secure an adjudication of the same controversy and obtained the earlier decree, but the federal court held the decree of the state court void because it was violative of the constitutional right of the plaintiff to an adjudication of the controversy and the enforcement of that adjudication by the federal court, because, for the defendant, after the federal court had acquired jurisdiction of the controversy and the parties, to proceed in a suit in the state court against the plaintiff to obtain an adjudication of the controversy by that court, would, if effective, defeat the object of the suit in the federal court, and Judge Field said:

"William Sharon, being a citizen of Nevada, had a constitutional right to ask the decision of the federal court upon the case presented by him, and

it would be a strange result if the defendant, who was summoned there, could, by any subsequent proceedings elsewhere, oust that court of its jurisdiction and rightful authority to decide the case. The Constitution declares that the judicial powers of the United States shall extend to controversies between citizens of different states, a provision which had its origin in the impression that local attachments and prejudices might injuriously affect the administration of justice in the state courts against the claims of citizens of other states. * * * The jurisdiction of the federal court having attached, the right of the plaintiff to prosecute his suit to a final determination there cannot be arrested, defeated, or impaired by any proceeding in a court of another jurisdiction. This doctrine we hold to be incontrovertible. It is essential to any orderly and decent administration of justice, and to prevent an unseemly conflict of authority, which could ultimately be determined only by superiority of physical force on one side or the other."

[3] And the conclusion is that the power was vested in and the duty was imposed upon the court below to prevent by its injunction, until it could adjudge the controversy between the Burke Company and the board and its members, and could enforce its final judgment or decree in the suit in that court, the prosecution by the board, its members, attorneys, agents, or representatives, of its suit in the state court against the defendants therein, or any of them, which would or might interfere with, delay, or impair the effect of its adjudication between the Burke Company and the board involved in the first action, which was brought by the Burke Company in that court.

[4] This conclusion renders further discussion and any extended treatment of the motions in this case unnecessary. The contention of counsel for the board, however, that the injunction issued by this court was too broad, because it restrained it from prosecuting any action against the sureties on the bond of the Burke Company to perform the contract, has received consideration, but it has not proved convincing. The liability of the sureties is conditioned by the liability of the Burke Company under the contract, even if they may be severally or separately sued. English v. Shelby, 116 Ark. 212, 220, 172 S. W. 817. And a suit by the board against, and a recovery of them, or of either of them, might, and if the Burke Company were properly called to defend, as it probably would be, probably would determine its liability to pay the amount of that judgment to the surety or the board before the court below could adjudicate the controversy that conditions the liability of the board, the Burke Company, and the sureties. The constitutional right of the Burke Company to the exclusive adjudication of this controversy and to the enforcement of that adjudication by the federal court may not be lawfully evaded or avoided by the board, or by its members or agents, either by joining the sureties of the Burke Company as defendants with the latter in a suit by the board against them, or by suing them separately in a state court to obtain in that court an adjudication of the controversy between the Burke Company and the board, which conditions the liability of each to the other, and the injunction to be issued pursuant to this decision should be broad enough to prevent any such result.

Let the order and decree from which this appeal was taken be reversed, let this case be remanded to the court below, with instructions to issue its injunction in accordance with the views expressed in

this opinion, let the injunction issued by this court herein be, and it is, continued in force until the injunction to be issued by the court below, pursuant to this opinion, takes effect, let the motions of the board and its members for a modification of the injunction issued by this court, and for an injunction against the prosecution by the Burke Company of its action first brought in the federal court below be denied, and let the Burke Company recover its costs in this court.

LEWIS, District Judge (dissenting). Taking the two proceedings as both in personam, I admit at once that the jurisdiction of the Federal court in the law action cannot be ousted or obstructed by the suit in equity brought later in the State court; and I think an admission to the controverse is equally necessary, that the jurisdiction of the State court cannot be ousted or obstructed by the prior action in the Federal court. Each party had a right to invoke, by appropriate procedure, the jurisdiction of the tribunal to which he appealed, and I do not conceive that the right of one is any greater in that respect than that of the other. Each is a suitor before a court with plenary power to decide the one controversy, and there is no presumption that one will decide it better, or more justly, than the other. Jurisdiction is the right and power to hear, consider and determine a controversy between parties litigant. How, then, does the exercise of that power by the State court interfere with or impede the exercise of the same power by the Federal court? The same right, duty and power is lodged in each, it is concurrent, and when exercised by one the controversy is at an end. There would then be no longer a cause in which the power could be exerted, and there could be no conflict or interference. The controversy would become res adjudicata, and the parties plaintiff had an equal right to proceed until that end was reached. I understand this to be the rule of comity which came out of the necessities of our dual system, and which, it is said, ripened long ago into a principle of right and law. I had believed that this court had firmly announced its adherence to the rule in Merritt v. Steel Barge Co., 79 Fed. 228, wherein it is said, at page 232, 24 C. C. A. 530, at page 535:

"Although a judgment may be rendered in the second suit before the first suit is tried, and may be pleaded in bar in the latter suit because the issue and the parties to the two suits are the same, yet it has never been supposed that the fact that a judgment of another court is offered in evidence to conclude the parties on a given issue or issues either defeats or impairs its jurisdiction, or has any necessary tendency to occasion a conflict of authority"

—and in Ogden City v. Weaver, 108 Fed. 564, wherein it is said, at page 568, 47 C. C. A. 485, at page 489:

"It is simply one of those cases, such as frequently occur, where a State court and a Federal court, in the exercise of a jurisdiction which rightfully belongs to each, are called upon to determine the same question, and the fact that they may disagree and decide the question differently in no wise interferes with the right of either to proceed"

—and in W. E. Stewart Land Co. v. Arthur, 267 Fed. 184. In B. & O. R. Co. v. Wabash R. Co., 119 Fed. 678, 57 C. C. A. 322, Judge Jenkins, speaking for the court in the Seventh Circuit, said:

"Where a suit is strictly in personam, in which nothing more than a personal judgment is sought, there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined; and this because it neither ousts the jurisdiction of the court in which the first suit was brought, nor does it delay or obstruct the exercise of that jurisdiction, nor lead to a conflict of authority where each court acts in accordance with law."

Supporting authority may be found in the cases cited above. In Arthur's Case, supra, he was first sued by the Land Company in a Federal court in Iowa, and later by the same plaintiff on the same cause of action in a State court in Oklahoma. This court held that the Land Company should not be enjoined in the maintenance of both actions against him at the same time; and to me it seems an unjust rule that permits the plaintiff to maintain the second action and denies an equal right to the defendant.

I think the order of the District Judge denying the writ in this case should be affirmed, and I therefore dissent