PROUT v. STARR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 150.   Argued January 26, 27, 1903.—Decided February 23, 1903.

It is competent and proper for all the parties to an action to agree to dispense with taking evidence, to accept the evidence taken in other cases in which the allegations of fact and the contentions of law are the same, and to abide by decrees to be entered therein. And, where the decrees entered in such other cases have been affirmed by this court, the Circuit Court in which the cases are pending should enter a similar decree in the case in which the agreement is made.

Such agreement when made by the attorney general of the State as a party to any action is binding upon his successors in office who have been properly substituted as parties to the action in his place.

The Constitution of the United States, with the several amendments thereof, must be regarded as one instrument, all of whose provisions are to be deemed of equal validity. And in an action properly instituted against a state official the Eleventh Amendment is not a barrier to a judicial inquiry as to whether the provisions of the Fourteenth Amendment have been disregarded by state enactments.

The contentions of law in this case were considered and determined by this court in *Smyth* v. *Ames*, 169 U. S. 466, which is now followed.

ON August 3, 1893, James C. Starr and Samuel W. Allerton, citizens of the State of Illinois, on their own behalf and on behalf of others similarly situated, filed a bill of complaint in the Circuit Court of the United States for the District of Nebraska, against the Chicago, Rock Island and Pacific Railway Company; George H. Hastings, Attorney General; John C. Allen,

Secretary of State; Eugene Moore, Auditor of Public Accounts; Joseph F. Bartley, State Treasurer, and A. R. Humphrey, Commissioner of Public Lands, all of whom were officers of the State of Nebraska, and as such constituted its board of transportation, and William A. Dilworth, J. M. Rountz and J. W. Johnson, secretaries of said board, and all citizens of Nebraska.

The bill brought into question, under the Constitution and laws of the United States, the validity of a certain act of the legislature of Nebraska, approved April 12, 1893, entitled "An act to regulate railroads, to classify freights, to fix reasonable maximum rates to be charged for the transportation of freights upon each of the railroads in the State of Nebraska and to provide penalties for the violation of this act." It was alleged that if the provisions of the act were put into effect, the earnings of the said railroad company from its business in the State would be materially lessened and would not pay the operating expenses thereof, nor yield any money from which the railroad property could be maintained, and would in effect work a confiscation thereof; that if the penalties imposed in the said act were enforced the entire property of the company would be taken away; that the plaintiffs were stockholders of the company, and had requested the officers and directors thereof to take proceedings to contest the validity of said act, but they had refused to do so. The principal prayers of the bill were that the company, its officers, agents and employés, should be restrained by injunction from adopting a schedule of rates to be charged for the transportation of freight on its road, according to the terms and provisions of the said act; and that the said board of transportation, and its members and secretaries, should be enjoined from entertaining or determining any complaint, and from instituting or prosecuting any proceeding or action to enforce the observance of the provisions of said act; and that the attorney general should in like manner be enjoined from bringing any proceedings by way of injunction or by other process or civil action or indictment against said company for or on account of the non-observance by it of the provisions of said act.

Thereupon a restraining order of the Circuit Court was is-

sued, enjoining the railroad company, the board of transportation and its members and the said attorney general, as prayed for in the bill; said order was to remain in force until a formal motion for injunction or to set aside the order be made, heard and decided; and a bond was to be given in the sum of $10,000. This order was duly served upon each and every of the said defendants, together with process of subpœna.

Afterwards, on the 2d day of September, 1893, a joint and several answer was filed by the said board of transportation, its members and secretaries. Therein it was averred that the said defendants were all agents and officers of the State of Nebraska, and had no personal or pecuniary interest whatever in the event of the suit, and were not proper parties thereto, but that said bill of complaint should have been brought against the State of Nebraska; that the said State was the real party in interest, and that the State had not and did not in any way whatever consent to the bringing of the action, and had not and did not submit in any way to the jurisdiction of the said Circuit Court to hear and determine the matters complained of in said bill; and the defendants submitted that, under the Eleventh Amendment of the Constitution of the United States, the courts of the United States were wholly without jurisdiction to try, hear and determine the several matters in difference charged and set forth in the bill of complaint; and that, under the Constitution of the United States and the constitution and laws of the State of Nebraska, the complainants had a full and adequate remedy at law. The defendants further denied that the state legislation in question violated the provisions of the Constitution of the United States which forbid any State to deprive any person of his property without due process of law, or to deny any person within its jurisdiction the equal protection of the laws, or to pass a law impairing the obligation of a contract, or which interferes with commerce between the States.

On October 3, 1893, the complainants filed their replication to the answer.

At and about the same time, and in the same court, certain stockholders of the Chicago, Burlington and Quincy Railroad

Company, of the Chicago and Northwestern Railway Company, and of the Union Pacific Railway Company, filed three other bills of complaint, in which the said railroad companies and the said persons comprising the board of transportation were defendants, and in which bills the same facts and circumstances were alleged and the same relief was prayed for as in the bill in the present case. All of the state officers appeared and answered by the same counsel, and alleged the same defences and contentions as were alleged in their answer in this suit. Those cases were put at issue, and after a large amount of evidence was put in, final decrees were rendered against the defendants, and, on March 7, 1898, the decrees of the Circuit Court were affirmed by this court. *Smyth* v. *Ames*, 169 U. S. 466. No testimony was taken by either party in the present case, but it was agreed, while the other cases were pending, that the proofs taken in them should be accepted with the same force and effect as if taken in this case; that the case should not be further particularly proceeded in until the Supreme Court should have rendered its decree in the other cases, when a decree should be entered conformable to those entered by the Supreme Court in the other three cases.

Meanwhile, Hastings, the attorney general when the bills were filed, was succeeded in his office by Smyth, who by proper order was substituted as defendant and appellant. Overlooking or disregarding the existing preliminary injunction of the Circuit Court, and the agreement that this case should abide the result in the other cases, Smyth, as attorney general, brought an action in the Supreme Court of the State of Nebraska against the said Chicago, Rock Island and Pacific Railway Company, alleging that the company, in violation of the act of April 12, 1893, at divers times had charged for the transportation of freight between points on its road in Nebraska rates in excess of those fixed by the act, and claiming judgment for $310,000, the amount of penalties alleged to have accrued. The attention of Attorney General Smyth was then called to the injunction order of the Circuit Court, and he thereupon gave the counsel of the company to understand that before the expiration of his term of office he would dismiss said action. Relying upon the under-

standing and agreement aforesaid, the company took no proceedings to enforce the said injunction and agreement.

On or about January 1, 1901, the said defendant Frank N. Prout succeeded the said Smyth in his office of attorney general, who declined to dismiss the said action in the Supreme Court of Nebraska. Whereupon the company filed its answer in the said action in due form, alleging the prior pendency of the action in the Circuit Court of the United States, and the existence, in full force and effect, of the injunction order of that court. No reply to this answer appears to have ever been filed, and thereupon, on or about February 15, 1901, the company moved the said court for judgment upon the pleadings, but the court denied said motion, upon grounds set out in its opinion. *State v. Chicago, Rock Island & Pacific Railway Company*, 61 Nebraska, 545. No further proceedings have been taken in said action, and the injunction order of the Circuit Court remains unmodified and in full force and effect.

On April 6, 1901, Starr and Allerton filed, in the Circuit Court of the United States, their supplemental bill, alleging the foregoing facts, and praying that the order and injunction previously issued upon their original bill be extended to and against the said Frank N. Prout, as attorney general, and that he be enjoined and restrained from further prosecuting the action brought in the name of the State of Nebraska against the railway company.

To this supplemental bill Frank N. Prout filed a demurrer on the ground that the bill was against the defendant in his official capacity as attorney general of the State, and was against the State, and that therefore the court was, under the Eleventh Amendment of the Constitution, without jurisdiction.

Upon argument the demurrer was overruled, and the injunction prayed for was issued. The order directing the injunction provided that if the defendant elected to stand by his demurrer and declined further to plead, a final decree should go as in the case of *Smyth* v. *Ames*, and the defendant having elected in open court to stand upon his demurrer, a final decree was entered comformable to that in *Smyth* v. *Ames*. From that decree the defendant Frank N. Prout appealed to this court.

*Mr. F. N. Prout,* attorney general of the State of Nebraska, in person for appellant.

*Mr. J. M. Woolworth* for appellees. *Mr. W. D. McHugh* was with him on the brief.

MR. JUSTICE SHIRAS, after making the foregoing statement, delivered the opinion of the court.

As the appellant demurred to the supplemental bill, and elected to stand on his demurrer when the final decree of the Circuit Court was entered, we have now only to consider the questions of law presented by the demurrer.

That it was competent for the parties, plaintiffs and defendants, to agree to dispense with taking evidence, to accept the evidence taken in the other cases, and to abide by the decrees therein to be entered, we have no reason to doubt, *Pacific R. R. v. Ketchum,* 101 U. S. 289, and that such an agreement was entered into is conceded. The allegations of fact and the contentions of law being the same in all the cases, such an arrangement was convenient and proper. The decrees in the other cases having been affirmed by this court, it was in accordance with that agreement that the Circuit Court should enter a similar decree in the present case. In so far, then, as the substantial merits of the case are concerned, we are not called upon to consider them. They have been concluded by the reasoning and opinion of this court in the other cases. *Smyth* v. *Ames,* 169 U. S. 466.

But by this appeal we are asked to declare that the Circuit Court had no jurisdiction because it appears, on the face of the bill, that the complaint is essentially against the State of Nebraska, and is in contravention of the Eleventh Amendment of the Constitution of the United States.

It is a sufficient answer to this contention that it was made, considered and determined in *Smyth* v. *Ames.* In the opinion in that case it was said:

"Within the meaning of the Eleventh Amendment of the Constitution, these suits are not against the State, but against certain individuals charged with the administration of a state

enactment, which, it is alleged, cannot be enforced without violating the constitutional rights of the plaintiffs. It is the settled doctrine of this court that a suit against individuals, for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of that amendment. *Pennoyer* v. *McConnaughy*, 140 U. S. 1, 10 ; *In re Tyler*, 149 U. S. 164, 190 ; *Scott* v. *Donald*, 165 U. S. 58, 68 ; *Tindal* v. *Wesley*, 167 U. S. 204, 220."

The Constitution of the United States, with the several amendments thereof, must be regarded as one instrument, all of whose provisions are to be deemed of equal validity. It would, indeed, be most unfortunate if the immunity of the individual States from suits by citizens of other States, provided for in the Eleventh Amendment, were to be interpreted as nullifying those other provisions which confer power on Congress to regulate commerce among the several States, which forbid the States from entering into any treaty, alliance or confederation, from passing any bill of attainder, *ex post facto* law or law impairing the obligation of contracts, or, without the consent of Congress, from laying any duty of tonnage, entering into any agreement or compact with other States, or from engaging in war—all of which provisions existed before the adoption of the Eleventh Amendment, which still exist, and which would be nullified and made of no effect, if the judicial power of the United States could not be invoked to protect citizens affected by the passage of state laws disregarding these constitutional limitations. Much less can the Eleventh Amendment be successfully pleaded as an invincible barrier to judicial inquiry whether the salutary provisions of the Fourteenth Amendment have been disregarded by state enactments. On the other hand, the judicial power of the United States has not infrequently been exercised in securing to the several States, in proper cases, the immunity intended by the Eleventh Amendment. *Hans* v. *Louisiana*, 134 U. S. 1, 10 ; *North Carolina* v. *Semple*, 134 U. S. 22 ; *Harkrader* v. *Wadley*, 172 U. S. 148 ; *Fitts* v. *McGhee*, 172 U. S. 516.

It is one of the important functions of this court to so interpret the various provisions and limitations contained in the organic law of the Union that each and all of them shall be respected and observed.

It is further argued by the appellant, as one of the grounds of his demurrer, that he was complained against in his official capacity as attorney general of the State of Nebraska, and not in his individual capacity as a citizen thereof, and that the attorney general of a State cannot be restrained by an injunction of a United States court from enforcing the criminal laws of the State.

This, we think, is only another phase of the same question.

It is true that the defendant was included in the bill as the attorney general of the State, but that was because he was one of the board of transportation, which was directed to enforce the provisions of the act. The bill did not seek to interfere with the acts of the attorney general in prosecuting offenders against the valid criminal laws of the State, but its object was to prevent him from collecting penalties that had accrued under the provisions of a statute judicially determined to be void. The injunction must be so read and understood.

Several changes of incumbents in the office of attorney general took place while the cases were proceeded in, but that did not deprive the court of jurisdiction. The successors in office were duly substituted, and thus became subjected to the preliminary and final decrees of the court. The object of the supplemental bill was to restrain the present appellant, as successor to Smyth, from attempting to transfer the very matters that stood for judgment in the Federal court to the state court by filing a bill in the latter. Such a course might bring about a conflict between those courts, and create the confusion so often deprecated by this court. *Peck* v. *Jenness*, 7 How. 612, 625 ; *Chittenden* v. *Brewster*, 2 Wall. 191 ; *Orton* v. *Smith*, 18 How. 263.

The jurisdiction of the Circuit Court could not be defeated or impaired by the institution, by one of the parties, of subsequent proceedings, whether civil or criminal, involving the

same legal questions, in the state court.    *Harkrader* v. *Wadley,* 172 U. S. 148, 166.

The decree of the Circuit Court is

*Affirmed.*

MR. JUSTICE HARLAN concurring.    I am in favor of modifying the judgment in some particulars and then affirming it, but I do not concur in all the reasoning of the opinion.