THE W. J. HINGSTON et al.

(District Court, W. D. Pennsylvania. March 24, 1906.)

No. 1.

1. ADMIRALTY—SUIT TO RECOVER VESSEL—RIGHT OF REAL PARTIES IN INTEREST TO DEFEND—STIPULATE FOR COSTS, ETC.

In a suit in admiralty to recover a vessel which has been seized by state officers for violation of a state fishery law, and is held by respondents merely as their custodians, such officers or other representatives of the state may appear and answer without giving the stipulation with sureties for the payment of costs and damages required from interveners by admiralty rule 34.

2. COURTS—CONFLICT OF JURISDICTION—LIBEL AGAINST VESSEL SEIZED UNDER STATE LAW—APPEARANCE FOR STATE—MOTION TO DISMISS—PRACTICE.

A court of admiralty is not deprived of jurisdiction of a suit to recover possession of a vessel duly licensed and enrolled, under the navigation laws of the United States, by the appearance of officers of the state claiming to hold the vessel under process issued by a state court for violation of a state fishery law, where the constitutionality of such law is seriously attacked by the libelant, since such appearance does not render the suit one against the state, within the meaning of the eleventh constitutional amendment, and the question is one which it is competent for the libelant to raise, and for the court to determine.

In Admiralty. On motion to dismiss libel.

W. A. Stone, for the motion.

Clark Olds, opposed.

ARCHBALD, District Judge.* The libelant, Michael Maher, on November 27, 1905, was the owner of the fishing steamer W. J. Hingston, a vessel of 20 tons burthen and upwards, duly enrolled and licensed under the navigation laws of the United States, at the port of Erie, Pennsylvania, and engaged in fishing in the waters of that lake, and in commerce and navigation thereon. He charges that on the day and at the place named, while preparing with his officers and crew for a fishing voyage, the respondents Patrick and Michael J. Cribbins took forcible possession of the vessel, her nets, apparel, etc., which they have retained up to the present time; and he seeks by this libel to repossess himself of the same. An attachment and monition having been duly issued and served, December 14th, J. W. Criswell, a warden of the department of fisheries of the state of Pennsylvania, appeared and made answer thereto; asking leave to intervene on behalf of the commonwealth; denying that forcible possession was taken of the vessel, as charged by the libelant; and averring that, on the day in question, acting as warden, under authority of the commissioner of fisheries, and by advice of the Attorney General of Pennsylvania, in accordance with the provisions of the act of Assembly of that state, approved April 22, 1905 (P. L. 272), and upon due information and complaint made before an alderman of the city of Erie, charging the libelant and his crew with a violation of said act by reason of unlawful fishing with the said vessel in the waters of Lake Erie, he seized and took possession of the same, her tackle, apparel, and furniture, and turned them over to the department of fisheries which he represented; that, in pursuance of the said complaint, the libelant and his crew were brought before the said alderman and a hearing had, and by the arbitrary and unwarranted act of the alderman they were the same day discharged; but that a petition had been presented to the court of quarter sessions of Erie county, Pa., praying for leave to appeal, upon which a rule has been granted to show cause why it should not be allowed, which has not yet been disposed of, pending the determination of which, the boat is detained by the department of fisheries—the respondents Patrick and Thomas J. Cribbins having nothing to do with the original taking, and holding it merely as bailiffs.

An objection was made to the reception and allowance of this intervention and answer, on the ground that it was not accompanied by a stipulation, with sureties, for the payment of costs and damages, as provided by admiralty rule 34. But I am not inclined to reject it upon that score. It is a question whether in strictness it is an intervention, within the meaning of the rule; the parties named as respondents in the libel being merely representatives of others, as the libelant must have known. And particularly as it is supplemented by a similar answer by W. E. Meehan, commissioner of fisheries, protesting

*Specially assigned.

144 F.—36

against the court taking jurisdiction, by reason of the interest of the commonwealth, and by a special appearance also, by Hampton L. Carson, Attorney General, making the same objection; upon the strength of which a motion to dismiss the case for want of jurisdiction is now made.

On motion to dismiss before hearing, the libel and not the answer is to be looked to; no replication being necessary in admiralty to put the case at issue (admiralty rule 51), and new facts set up in the answer being taken as denied by the libelant, as of course. By strict practice, therefore, the respondents here are put to the proof of that which they allege to justify the seizure, the legality of which, both in law and in fact, as shown by the argument of counsel, is stoutly contested. It is contended, however, in behalf of the motion, that the interest of the commonwealth is manifest on the face of the record, and that the Attorney General having appeared and objected on its behalf, to say nothing of the commissioner of fisheries and warden, the state has thereby become a party, and the court is powerless to proceed further.

It may be conceded, for the purposes of this motion, that the seizure which is complained of was made by the warden, in the way stated, for the alleged violation by .the libelant of the fisheries act of Pennsylvania which is relied on; and that the acts of the parties, by whom it was made, are adopted and justified by the representatives of the state, who appear in its behalf. But that does not necessarily preclude the court's jurisdiction. It is averred in the libel that the vessel which was seized was duly licensed and enrolled under the navigation laws of the United States, and engaged in the business of fishing upon the lakes; and it is contended that the Pennsylvania statute, if it undertakes to subject a vessel of that kind to process issuing out of the state courts for the breach of state fishery regulations, invades the maritime jurisdiction committed by the Constitution to the federal courts, and is therefore invalid. Other defenses to the seizure proceedings are also suggested, as for instance, that the act does not in any event authorize a taking, until there has been a conviction, and then only of boats and their furniture and appliances, and not of vessels. Also that the alderman dismissed the charge, upon which the vessel was seized, after the hearing, and that no appeal lies from his decision. But these latter are matters for the state court, and are not relevant here. The constitutionality of the act, which is the basis of the proceedings, however, is; and, if it is unconstitutional, by all the authorities, it affords no justification or protection. for the officers of the state or others who have acted under it, which the court may proceed to inquire, without regard to the interests of the state involved. Such a case in not a suit against the state, within the meaning of the eleventh amendment, notwithstanding there may be an appearance on behalf of it. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; Prout v. Starr, 188 U. S. 537, 23 Sup. Ct. 398, 47 L. Ed. 584; Gunter v. Atlantic Coast Line, 200 U. S. 273, 26 Sup. Ct. 252, 50 L. Ed. ——. That, then, is the situation here. The constitutionality of the state fisheries law being drawn in question, and there being a show

of substance to the contention which is made against it, the case must proceed until it can be determined in due course. If the law is found to be invalid, the libelant will be entitled to the return of his property, which this proceeding is competent to effect. If, on the other hand, it is found to be valid, the libel will have to be dismissed. But the case not yet being fully before the court, it is not ready for the determination of that question, and must go on therefore until it is.

It is further to be noted that, if the appeal to the quarter sessions, which has been applied for, should be refused, which is possible, the respondents would have nothing whatever to stand on, and the vessel would have to be given up; which is another reason for retaining the case.

The motion to dismiss is overruled.