## FISKE et al. v. STATE OF MISSOURI et al.
### No. 9428.

Circuit Court of Appeals, Eighth Circuit.

Nov. 26, 1932.

Rehearing Denied Jan. 17, 1933.

G. A. Buder, Jr., of St. Louis, Mo. (O. E. Buder, of St. Louis, Mo., on the brief), for appellants.

Henry H. Stern, Sp. Asst. Atty. Gen. (Stratton Shartel, Atty. Gen., and Richmond C. Coburn, Sp. Asst. Atty. Gen., on the brief), for appellees.

Before STONE, KENYON, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

Ehrhardt D. Franz left a testate estate to his wife, Sophie, and their ten children. A portion thereof later passed into a trust with the same persons as beneficiaries. Extended litigation developed, wherein three and one-third of the ten interests represented by the children were arrayed against Sophie, the trustees, and six and two-thirds of the children interests. The history, issues, and results of that litigation are set forth in opinions in the various appeals to this court.[1] For the present, it is helpful to note only that the litigation determined the interests of all parties to the trust to be (as far as pertinent here) that Sophie Franz had a life interest in the income from the trust which would terminate at her death and then the corpus be distributable by the trustees to the other beneficiaries. This applied to shares of stock of the Burroughs Adding Machine Company which were the main part of the trust estate. Sophie Franz died. Various of the beneficiaries have moved for distribution of the trust estate. The testate estate of Sophie is in course of administration in a probate court of Missouri. The state is entitled to collect inheritance taxes upon the estate of Sophie passing to her devisees. The appellants here represent five of the six and two-thirds children interests, and were some of the defendants in this litigation, and all are nonresidents of Missouri.

Claiming that these six and two-thirds interests in the Burroughs stock held in the trust estate were subject to inheritance taxes as part of the estate of Sophie, that they had not been inventoried in her estate, and that the state had a lien thereon for such taxes, the state was given leave to intervene in this litigation. It filed its petition in intervention wherein it prays that a portion of this stock be transferred from the trustees to the court registry to secure the inheritance taxes thereon and be held "until it may be determined in the Probate Court of the City of St. Louis whether such stock should have been inventoried therein" as part of the Sophie Franz estate.

Shortly after the petition in intervention was filed, the representatives of five of the above six and two-thirds children interests filed their "Ancillary and Supplemental Bill of Complaint for an Injunction." This bill was directed at "the State of Missouri, Stratton Shartel, Attorney General of the State of Missouri, Franklin Miller, Circuit Attorney of the City of St. Louis, State of Missouri, Richmond C. Coburn and Henry H. Stern"— the last two being attorneys for the state in connection with inheritance taxes in the Sophie Franz estate. This bill alleged that the state and the other parties, as its attorneys, had caused to be served on the executor of the Sophie Franz estate a citation from the probate court intended to discover and have inventoried as a part of such estate the Burroughs stock in the trust estate belonging to them; that such action was contrary to the decree of the trial court adjudging them entitled to receive this stock from the trustees; and that the respondents would attempt to obtain orders in the probate court which would be "adverse and prejudicial to the rights and interests of the above named plaintiffs in this cause in this Court and orders, decrees and judgments which will prejudicially affect, impair and defeat the jurisdiction of this Honorable Court and the decree rendered by it in the premises." The prayer for restraint was from "directly or indirectly prosecuting further the said citation * * * and particularly from seeking or obtaining any order, decree or judgment therein until the further direction of this Honorable Court," and for temporary relief.

Thereafter the state, specially appearing, filed its motion to dismiss the ancillary and supplemental bill on the grounds that it failed to state facts warranting the relief; that it

[1] Franz v. Buder, 11 F.(2d) 854, 858; Franz v. Franz, 15 F.(2d) 797; Buder v. Franz, 27 F.(2d) 101; Id., 34 F.(2d) 353; Id., 38 F.(2d) 605; Mississippi Valley Trust Co. v. Buder, 47 F.(2d) 507; Mississippi Valley Trust Co. v. Franz, 51 F.(2d) 1047.

was an action against the state which had not consented to be sued, in violation of the Eleventh Amendment; that it sought to enjoin proceedings in a state court, in violation of section 265 of the Judicial Code (28 USCA § 379), and sought to interfere with the proper administration of an estate in the state probate court.

The trial court sustained the motion on the ground that the Eleventh Amendment prevented the action without the consent of the state, and that the state had neither consented nor waived its rights to such immunity. Declining to plead further, an order was entered dismissing the ancillary and supplemental bill. This appeal is from that order.

Three issues are presented on this appeal, as follows: Did the intervention proceedings constitute a waiver by the state of its immunity under the Eleventh Amendment? If no waiver, is this action within the immunity of the amendment? Is this action within the protection of section 265 of the Code?

### Waiver.

The immunity from suit of a state under the Eleventh Amendment is a personal privilege which may be waived (Gunter v. Atlantic Coast L. R. Co., 200 U. S. 273, 284, 26 S. Ct. 252, 50 L. Ed. 477), and this rule is applicable to an intervention (Clark v. Barnard, 108 U. S. 436, 447, 448, 2 S. Ct. 878, 27 L. Ed. 780). The action of the state claimed by appellants to constitute a waiver is its intervention in this main case. Appellees oppose that such is not the effect of the intervention. The motion of the state for leave to intervene prayed that it be permitted so to do as "a party defendant herein." Standing alone, this would strongly suggest that the intervention was to be of a character which would constitute a waiver. This is, however, not conclusive. The petition in intervention must be examined to ascertain what right or remedy the state was seeking to obtain from the federal court. The substance of that petition is that certain stock of appellants within the jurisdiction of the federal court was claimed by the state to be derived through the estate of Sophie Franz, and therefore subject to state inheritance taxes; that the state had a lien thereon for such taxes; that the stock had not been included in the inventory of the Sophie Franz estate in the probate court; that citation of the executor to show why this stock was not included had been issued, and that matter would be determined in the probate court; that these appellants have moved for distribution to them by the federal court. On the situation thus set out, the prayer is that a portion of this stock be transferred from the trustees to the registry of the court "to secure the assessment and collection" of the inheritance taxes, and to be there held "until it may be determined in the probate court * * * whether said stock should have been inventoried therein" by the executor of the Sophie Franz estate. The state seeks no determination of any rights or title, but expressly pleads that such determination will take place in the probate court. The only relief asked is that the federal court do not distribute this stock from the trustees to appellants, but place it in its registry to abide the result of the determination of the rights of the state by the probate court. Obviously, the only purposes and possible results of the intervention would be to retain the stock within Missouri and in a place where it could be made to respond to the tax claims of the state if those claims (then being pressed in the probate court but undetermined) should be upheld. The substance of the relief sought is the temporary retention of custody by the federal court. This situation is essentially different from the statement in Cunningham v. Macon & Brunswick R. Co., 109 U. S. 446, 452, 3 S. Ct. 292, 296, 609, 27 L. Ed. 992 (relied upon by appellants) to the effect that the rights of a state "will receive the same consideration as any other party interested in the matter, and be subjected in like manner to the judgment of the court" where the state intervenes and "when she may have a lien or other claim on the property" in the custody of the court. That language had reference to instances where the state seeks to have its lien or claim established and enforced in the federal court having the property affected thereby. Such a case was Clark v. Barnard, 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed. 780, where the state intervened to prosecute a claim to the fund in the custody of the federal court. Here the state is not seeking any such relief, but expressly disavowing it. We are not concerned on this appeal with the propriety of permitting the intervention or with its legal classification (as pro interesse suo or otherwise). The only present pertinency of the intervention is whether it is that character of appearance in the main litigation as will work a waiver of the immunity of the amendment. Here the only thing sought is the temporary impounding of this stock, so that it may, possibly, be subjected to a lien which the state hopes to establish in another tribunal. Such action sought from the federal court is in no

sense a matter of right, but rather partakes of grace. No right of the state is sought to be presented to or determined by the federal court. We think this limited character of appearance in a federal court by a state cannot be regarded as a waiver of the immunity given by the amendment.

### Interference with Federal Jurisdiction.

The basis of appellants' bill is that the respondents are seeking to invade the exclusive jurisdiction of the federal court and affect the decrees therein injuriously to their rights thereunder. Respondents deny any such intention or effect. It is necessary to determine this matter before we take up the effects of the Eleventh Amendment and of section 265 of the Judicial Code.

The ancillary bill alleges, and the motion to dismiss admits, for the purposes of the motion, that the rights and interests of these appellants in this Burroughs stock have been adjudicated in the federal court, and they are entitled to distribution from the trustees after certain charges in connection with the trust are satisfied. There is a similar admission that the proceedings in the probate court are designed to and may result in a determination of these same rights and interests which will be contrary to the result in the decrees of the federal court. These legal admissions are sufficient to establish, for the purposes of this appeal, that the state is claiming the right to relitigate in the probate court issues determined in the federal court. However, the state contends here it is doing nothing of the kind. It contends that the rights of only the plaintiffs in the main case were determined. Both parties have gone beyond the immediate pleadings in their presentation of this matter. Possibly we should abide by these pleadings, but, since the parties have taken this excursion, and since the questions here are of grave public consequence, we think it well to follow them so that our determination may rest upon the actualities of the real situation. We are further encouraged to do this because we can find the solution in our own opinions in various of the appeals in the main case. Therefore we will inquire whether the contemplated action of the state in the probate court is designed to relitigate issues concerning the interests of these appellants in this stock which have already been determined in the federal court. It is entirely true that the interests of these appellants are not formally and specifically declared in any of the decrees brought to our attention in the litigation, and that prior to the third appeal [Bud-

er v. Franz (C. C. A.) 27 F.(2d) 101] they were contesting the position of the plaintiffs. That, however, is not determinative.

When this litigation started, none of these remaindermen were parties thereto. On the first appeal (Franz v. Buder, 11 F.(2d) 854), this court determined that the present appellants were "indispensable" parties to the litigation because the action was in the nature of an action in rem and concerned a res in which they were legally interested. It was because of our determination on that appeal that they were brought into the litigation. In that first appeal, jurisdiction of the res, which meant the trust estate, was decided to be the sole basis for retaining jurisdiction in this entire litigation, and that jurisdiction was, in that first opinion, declared to be "exclusive" and as involving "the potential necessity of assuming control of that property for the purpose of enforcing any decree that may be rendered, and of preventing any disposition of the property that may impair the efficacy of that decree." 11 F.(2d) 854, at page 859.

Having established the jurisdiction to the res, and the litigation being over the rights of all parties thereto in the res, it was inevitable that the basis of the court's determination should apply with equal force to all parties. This situation is not only self-evident, but it is directly expressed in several of the opinions in these various appeals. In the second appeal (Franz v. Franz, 15 F.(2d) 797, 800), this court said: "While in the original bill the plaintiff only sought to establish and protect his undivided remainder interest, the fundamental questions of fact and law which would determine the extent of the plaintiff's remainder interest would likewise determine and affect the other remainder interests, and a decision adverse to the plaintiff, although it would not bind the owners of other remainder interests, would cast a cloud on their title, and for that reason we held the court ought not to proceed in their absence." On the third appeal [Buder v. Franz, 27 F.(2d) 101, at page 114], this court said: "In short, all of this Burroughs stock here involved is corpus in which Sophie Franz has only a life estate."

Also several times there have been direct expressions concerning the effect of our decision on the merits upon the question of administration of any part of this Burroughs stock as a part of the estate of Sophie Franz. On the third appeal (Buder v. Franz, 27 F.(2d) 101, 108), after quoting from a provision in the trust agreement requiring "all" of

the trust property to be administered in the estate of Sophie Franz upon her death, this court said: "If this quoted provision were followed, all of this property would be subject to various taxes, fees and costs (in course of such administration) which should not attach to any of such property belonging to the remaindermen because such would be deliverable direct to them by the trustees, upon termination of the life estate, and would not pass through the administration of the estate of Sophie Franz." In the same opinion [page 114 of 27 F.(2d)], is: "With the termination of the trust by her death, her absolute property will pass to administration (testate or intestate). As her death will likewise terminate the life estate, the remaindermen will, thereupon, be entitled to receive direct from the trustees the property not belonging to Sophie Franz absolutely—such property has no relation to her absolute property and no administration can be had upon it." On the fourth appeal [Franz v. Buder, 34 F.(2d) 353, 356], this court said: "At the death of Sophie Franz, the corpus of that part of the trust estate which she derived from the estate of her deceased husband will be divided in accordance with the provisions of the will of Ehrhardt D. Franz; while the rest of the trust estate will be divided and distributed according to the provisions of the will of Sophie Franz, or if she die intestate, then in accordance with the statutes of descent and distribution of the state of her domicile." All of the above language was directly and particularly applicable to the stock in the Burroughs Adding Machine Company involved in the present intervention.

From this history of the main litigation, it is clear that the rights and interests of these appellants in this stock were involved in and determined in the federal court. Therefore it must be evident that the contemplated action of the state in the probate court must have the purpose to relitigate this very matter. Unless the state can there obtain a result directly opposed to the determination of the federal court, it will completely fail in its purpose. There could be no plainer case of interference with the jurisdiction of a court and defeat of its decrees entered within its jurisdiction.

### The Eleventh Amendment.

The question here is: Does the Eleventh Amendment deny jurisdiction to a federal court in an action by individuals against a state where the sole purpose and effect of such action is to protect the decrees of the federal court entered in a cause wherein it had jurisdiction?

This involves examination of the scope of that amendment. The amendment does not stand alone, and no construction of its meaning based upon such hypothesis can be sound. It is only a *part* of the Constitution, and must be construed as such. Like all instruments, the Constitution is subject to the rational rule of construction that the parts must be understood in relation to each other and to the entirety in order to preserve the fullest vitality of the whole instrument in all of its parts. "It cannot be presumed that any clause in the constitution is intended to be without effect * * * unless the words require it." Marbury v. Madison, 1 Cranch, 137, 174, 2 L. Ed. 60; Prout v. Starr, 188 U. S. 537, 543, 23 S. Ct. 398, 47 L. Ed. 584. Therefore, when some particular clause, in its bare wording, seems to destroy or limit or qualify some other clause, it is the office of the court to examine the involved parts in the light of the entire instrument with a view to preserving such extent of each as can harmoniously live together. Such rule has been applied to this amendment. In its broad literal meaning—standing alone—this amendment would prohibit all jurisdiction to any federal court of any case against a state by a citizen of another state or of a foreign state. Such was urged as its meaning in the historic case of Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257, which involved a writ of error to a state court where the plaintiff in error contended that his prosecution under a state statute was violative of the National Constitution. There the jurisdiction of the Supreme Court was predicated upon that part of clause 1 of section 2 of article 3 of the Constitution which declares: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution; * * *" Against this predicate, it was urged that this was a suit against a state, and therefore proscribed by the Eleventh Amendment, even if it did involve the national Constitution. In one of the greatest opinions of his career, Chief Justice Marshall preserved the full effect both of the clause in article 3 and of the amendment. That construction determined that the meaning of the amendment was less than its isolated wording. Also the great Chief Justice reviewed the history and purpose of the Amendment and declared " * * * it was intended for those cases, and for those only, in which some demand against a state is made by an individual, in the courts of the Union." Page 407 of

6 Wheat. In another case (Ex parte State of New York, 256 U. S. 490, 41 S. Ct. 588, 65 L. Ed. 1057), the scope of the amendment was broadened beyond the wording to accord with the spirit thereof; suits in admiralty being adjudged within the amendment, although the wording thereof covered only suits "in law or equity."

The instant case presents the same character of situation. As that case was an examination of the scope of the amendment in view of a portion of clause 1, section 2, of article 3 of the Constitution, so this case is an examination of the scope of the amendment in view of certain portions of sections 1 and 2 of article 3 of the Constitution. The parts of article 3 involved are "the judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish" (section 1), and "the judicial Power shall extend to all Cases, in Law and Equity, * * * between citizens of different States" (section 2). Under these constitutional sanctions, Congress has created the inferior federal courts and prescribed the extent to which and the conditions under which they shall exercise this "judicial power." Among these prescriptions of judicial power by Congress under the above constitutional provisions are the grant of jurisdiction to the District Courts "of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and * * * is between citizens of different States * * *" (28 USCA § 41 (1), Judicial Code, § 24 (1) amended), and that "the Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law" (28 USCA § 377, Judicial Code, § 262).

These grants of jurisdiction are within the power given Congress under the clauses of the Constitution above quoted. A part of that granted jurisdiction is the power and the duty to protect that jurisdiction. Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077; French v. Hay, 22 Wall. 250, 253, note, 22 L. Ed. 857. This is not merely a rule of comity, but "a principle of right and of law, and therefore, of necessity. It leaves nothing to discretion or mere convenience." Covell v. Heyman, 111 U. S. 176, 182, 4 S. Ct. 355, 358, 28 L. Ed. 390; Kline v. Burke Constr. Co.,

260 U. S. 226, 229, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077. Within that protective power is, of course, the judgments and decrees of federal courts in cases where they possessed jurisdiction to enter them. Dietzsch v. Huidekoper, 103 U. S. 496, 26 L. Ed. 497.

A long unbroken line of decisions in the Supreme Court has put these rules of law beyond challenge. They have been applied in every situation necessitating this protection and to all parties attempting to interfere with an exclusive jurisdiction in the federal courts. There have been two applications (by this court) in the litigation of the main case here. Franz v. Franz, 15 F. (2d) 797 and Mississippi Valley Trust Co. v. Franz, 51 F. (2d) 1047. Usually, the situation has been that of attempted relitigation in the state courts, but it has been applied to an act of a state Legislature. U. S. v. Peters, 5 Cranch, 115, 3 L. Ed. 53. Usually, the parties have been private litigants, but it has been applied to officials acting solely as state officers. Prout v. Starr, 188 U. S. 537, 23 S. Ct. 398, 47 L. Ed. 584.

The situation here is that a state is seeking to have a federal court, which has full jurisdiction over a res and which has entered its final decrees fully adjudicating the rights of these appellants in that res, transfer to and hold in its registry the property representing the interests of appellants in that res until the state can relitigate, in its own courts, the very issues of interest and title already determined by the decrees of the federal court. The state is not seeking permission of the federal court to allow this relitigation. Obviously it contemplates such relitigation. Its purpose in coming into the federal court having the res in jurisdiction is to have that court retain possession thereof, so that, if the state litigation results in a determination contrary to that of the decrees in the federal court, the state will have within its territory property from which it can realize upon this adverse determination. Faced with this threatened violation of their rights under the federal court decree, appellants have filed their ancillary proceeding to enjoin the state from thus disturbing their rights adjudicated and settled in the federal court. To this relief the state interposes the proposition that the court cannot act because the Eleventh Amendment denies it jurisdiction to act.

Baldly stated, the proposition is that a federal court is stopped by the amendment from preventing a state going into its own courts and overthrowing a decree which the federal court had jurisdiction to enter and has entered. This is a startling proposition. It

cannot harmoniously exist with the conception that the national Constitution has empowered Congress to grant to its established courts an attribute of judicial power which has been universally accorded all American courts (national or state) from the beginning of our present government—even back to the Continental courts before the Confederacy. U. S. v. Peters, 5 Cranch, 115, 3 L. Ed. 53.

Here the state is seeking by action of its executive branch through its courts to annul in part the decrees of a federal court. With this in mind, we may well paraphrase the language of Chief Justice Marshall merely by substituting "executives and courts" for "legislatures" when he said: "If the legislatures [executives and courts] of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery; and the nation is deprived of the means of enforcing its laws by the instrumentality of its own tribunals. So fatal a result must be deprecated by all; and the people of Pennsylvania [Missouri], not less than the citizens of every other state, must feel a deep interest in resisting principles so destructive of the union, and in averting consequences so fatal to themselves." U. S. v. Peters, 5 Cranch, 115, 136, 3 L. Ed. 53, quoted with approval in Rhode Island v. Mass., 12 Pet. 657, 751, 9 L. Ed. 1233.

If this amendment may be fairly construed so as to preserve the full vitality of its purpose without producing the unfortunate result apprehended by the great Chief Justice and evident to all, that should be done. To do so is but applying the rule that all provisions of the Constitution are of equal validity. Prout v. Starr, 188 U. S. 537, 543, 23 S. Ct. 398, 47 L. Ed. 584. The purpose of the amendment was to prevent enforcement of claims against an unwilling state. Cohens v. Virginia, 6 Wheat. 264, *407, 5 L. Ed. 257. This purpose is in no wise aided nor harmed by affecting the effectiveness of a federal court decree in an action between individuals. On the other hand, to admit the proposition that a state is immune from this judicial power in a federal court to protect its lawful jurisdiction and decrees introduces an unhappy element of discord between the nation and the states, an unfortunate weakening of the legitimate and necessary powers of the federal judiciary, and an uncertainty and instability as to private rights. We think the amendment carries no such poison. It can be given its full intended scope and effect without thus crippling the judicial power

provided for in other parts of the Constitution.

### Section 265 of the Code.

█ This section provides that no court of the United States shall grant an injunction to stay proceedings in a state court, except where authorized in bankruptcy proceedings. 28 USCA § 379. The relief sought by the ancillary bill is to enjoin the state and its attorneys from proceeding in the probate court—obviously, an injunction "to stay proceedings" in a state court. The Supreme Court has said: "The restrictions embodied in the section [this section] were, therefore, but a partial accomplishment of the more comprehensive result effectuated by the prohibitions of the 11th Amendment. Both the statute and the amendment relate to the power of courts of the United States to deal, against the will and consent of a state, with controversies between it and individuals." Gunter v. Atlantic Coast L. R. Co., 200 U. S. 273, 292, 26 S. Ct. 252, 259, 50 L. Ed. 477. We might well conclude that, since the broader amendment does not prevent an action against a state based upon protection of lawful existing jurisdiction in a federal court, the narrower statute could go no further. However, there is no reason suggested, and we know of none, why the statute should be differently applied because of the character of the parties to the litigation in the state court. The character of parties does not enter into the statute. As to the *statute* alone, a state is like any other party. The decisions are many that this statute does not apply where the stay of proceedings in the state court by injunction is solely to protect the jurisdiction of the federal court. "It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court." Kline v. Burke Constr. Co., 260 U. S. 226, 229, 43 S. Ct. 79, 81, 67 L. Ed. 226, 24 A. L. R. 1077.

### Conclusion.

Our conclusion upon the effect of the Eleventh Amendment and of section 265 of the Judicial Code fits accurately into an expression in the Gunter Case that, "indeed, the proposition that the 11th Amendment, or § 720 of the Revised Statutes [section 265 of the Code], control a court of the United States in administering relief, although the court was acting in a matter ancillary to a decree rendered in a cause over which it had

jurisdiction, is not open for discussion." 200 U. S. at page 292, 26 S. Ct. 252, 259, 50 L. Ed. 477. Our conclusion upon the appeal is that the court below erred in dismissing the ancillary and supplemental bill for lack of jurisdiction. The basis of that jurisdiction is the preservation of its own jurisdiction and decrees.

Since the only issue on this appeal is jurisdiction to entertain the ancillary and supplemental bill, we might rest here. However, it is well to state that the extent to which this jurisdiction should be exercised—possibly, the extent to which it exists—is the protection of the jurisdiction and decrees of the trial court. This cautionary statement is prompted by an allegation in the petition in intervention. In addition to allegations that appellants had "by pleadings filed in this cause" (the main case) transferred their interests to Sophie Franz, there is the allegation that this was also done "by diverse acts." What "acts" are meant is not stated. If this means conveyances or anything not considered in the main case, the determination thereof in some other court would not affect the jurisdiction in the main case. It would be foreign to that litigation. However, if all that is meant is something involved in this main litigation (such as the instruments dated January 7 and 30, 1920 [referred to in Buder v. Franz (C. C. A.) 27 F.(2d) 101, at pages 110 and 113], or the E. D. Franz Estate matter [referred to in Mississippi Valley Trust Co. v. Buder (C. C. A.) 47 F.(2d) 507, at page 508]), then such "acts" would affect the jurisdiction of the federal court which has already litigated those matters. On the hearing on the merits of the ancillary and supplemental bill, the trial court will be informed, and can suit its action so as to protect its jurisdiction and that alone.

The cause will be reversed, with directions to set aside the orders sustaining the motion to dismiss and dismissing the ancillary and supplemental bill and otherwise to proceed thereafter in accordance with this opinion.